**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 18 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DAVID L. UPCHURCH,

      Petitioner - Appellee,

v.

L.E. BRUCE, Warden, Hutchinson
Correctional Facility; CARLA
STOVALL, Kansas Attorney General,

      Respondents - Appellants.

No. 02-3242

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 01-CV-3196-DES)**

John K. Bork, Assistant Attorney General (Jared S. Maag, Assistant Attorney
General on the briefs), Topeka, Kansas for the Respondents-Appellants.

Gary W. Owens, Roger L. Falk & Associates, P.A., Wichita, Kansas for the
Petitioner-Appellee.

Before **LUCERO**, **McWILLIAMS**, and **ANDERSON**, Circuit Judges.

**LUCERO**, Circuit Judge.

In this habeas case, the district court granted relief to petitioner David Upchurch on the basis that his appellate counsel failed to mount an adequate challenge to his kidnapping charge. On appeal, we consider whether the Kansas Court of Appeals' ("KCOA's") decision denying post-conviction relief constituted an unreasonable application of Strickland v. Washington, 366 U.S. 688 (1984). We exercise jurisdiction pursuant to 28 U.S.C. § 2253, and reverse the district court's grant of habeas relief.

## I

Around midnight on Labor Day in 1995, Jessica Green was preparing for bed when she heard a knock at the front door. Kevin Loggins and an unknown male asked to speak with Green's husband Daron. Recognizing Loggins from a previous encounter, Green invited the two men inside and returned to the bathroom. Loggins then pointed a gun at Green's husband, ordering him onto the floor and demanding money and certain property. At some point, the unknown male let Upchurch into the house. As Green entered the living room, Loggins pointed the gun at her and directed Upchurch to accompany her to the bedroom. Upchurch demanded that she give him all her money and, when Green explained that she had none, threatened, "If you don't give me your money, I'm going to kill you." (Appellant's App. at 103.) Green informed Upchurch that her wallet was outside in her car. Upchurch started to exit the room, ostensibly to find Green's

-2-

wallet, only to turn around, grab Green by her collar, and pull her outside. As they approached the car, Green noticed that one of Upchurch's cohorts was already inside the car stealing the car stereo system. Ordered to find her wallet, Green was able to do so and handed it to Upchurch.[1]

Upchurch was charged with and convicted of one count of aggravated burglary, two counts of aggravated robbery, and two counts of aggravated kidnapping, and sentenced to 442 months' imprisonment. On direct appeal of his conviction, Upchurch raised numerous claimed errors, including an unsuccessful challenge to the sufficiency of the evidence in support of his convictions for the kidnapping of Jessica and Daron Green. He argued that inconsistencies in the testimony made it impossible to establish guilt beyond a reasonable doubt. Upchurch's counsel did not argue that his client's alleged actions failed to satisfy the elements of aggravated kidnapping under Kansas law. Following the KCOA's rejection of his direct appeal, Upchurch filed a petition for state post-conviction relief, claiming that his appellate counsel was constitutionally ineffective for having failed to argue the elements of aggravated kidnapping under state law. The petition was denied by the KCOA.

In a 28 U.S.C. § 2254 petition, Upchurch presented to the district court the

---

[1] In the process of doing so, Green was sexually abused by a third person; that event is only tangentially relevant and we do not develop those facts further.

-3-

same ineffective-assistance-of-appellate-counsel argument with respect to the kidnapping charges that he raised in his petition for state post-conviction relief. In granting habeas relief, the district court concluded that Upchurch's appellate counsel's failure to argue that Upchurch's actions did not satisfy the elements of aggravated kidnapping constituted "the omission of a dead-bang winner" that would have resulted in reversal on appeal. Upchurch v. Bruce, No. 01-3196-DES, slip op. at 2 (D. Kan. June 5, 2002). Kansas appeals, contending that the KCOA's denial of habeas relief on Upchurch's ineffective-assistance-of-appellate-counsel claim as it relates to the kidnapping of Jessica Green did not constitute an unreasonable application of Strickland.[2]

## II

Upchurch filed his federal habeas petition on May 16, 2001, and therefore the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs our review. See Paxton v. Ward, 199 F.3d 1197, 1204 (10th Cir. 1999) (stating that AEDPA applies to habeas petitions filed after April 24, 1996, regardless of the date of the criminal trial forming the basis of the conviction). Section 2254, as amended by AEDPA, provides that a writ of habeas corpus may not be issued with respect to any claim adjudicated on the merits in state court unless that

---

[2] Kansas does not appeal the district court's grant of habeas relief with respect to the kidnapping of Daron Green.

-4-

adjudication resulted in a decision:

> (1) . . . that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) . . . that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)–(2). Under the "contrary to" clause, federal habeas courts may issue the writ only "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). Under the "unreasonable application" clause, a federal court may grant habeas relief only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer v. Andrade, 123 S. Ct. 1166, 1175 (2003) (holding that "objectively unreasonable" analysis under § 2254(d)(1) is also different from "clear error" review).

Upchurch's claim regarding appellate counsel ineffectiveness is governed by the Supreme Court's decision in Strickland v. Washington, 466 U.S. 668

(1984), which was clearly established at the time his state-court conviction became final.  See Williams, 529 U.S. at 390–91 (concluding that Strickland qualifies as clearly established federal law under AEDPA even though the test, by necessity, requires a case-by-case examination of the evidence); see also Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) ("The proper standard for assessing a claim of ineffectiveness of appellate counsel is that set forth in Strickland v. Washington.").  Under Strickland, two prongs must be satisfied to show ineffective assistance of counsel in violation of the Sixth Amendment:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.  To establish the first component—deficient performance—a "defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 688.  To establish the second component—prejudice—a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

Claims of appellate-counsel ineffectiveness are often based on counsel's

-6-

failure to raise a particular issue on appeal.  See Cargle, 317 F.3d at 1202.

"[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  Smith v. Robbins, 528 U.S. 259, 288 (2000) (citing Jones v. Barnes, 463 U.S. 745 (1983)).  Although it is possible to bring a Strickland claim based on counsel's failure to raise a particular issue, "it is difficult to demonstrate that counsel was incompetent."  Id.   In order to evaluate appellate counsel's performance, "we look to the merits of the omitted issue." Cargle, 317 F.3d at 1202 (quotation omitted).  "If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance. . . ."  Id.  On the other hand, if the omitted issue "has merit but is not so compelling, . . .  [we must assess] . . . the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance."[3]  Id. (citing Smith, 528 U.S. at 288).

In ruling on Upchurch's claim, the KCOA determined that Upchurch's

_____

[3] In Neill v. Gibson, 278 F.3d 1044 (10th Cir. 2001), cert. denied, 123 S. Ct. 145 (2002), we rejected the proposition that omission of a "dead bang winner" is necessary to prevail on a claim of ineffective assistance of appellate counsel. Id. at 1057 n.5.  At the same time, of course, omission of a "dead bang winner" can be a sufficient basis for such a claim.  Cargle, 317 F.3d at 1202 n.4.

counsel was not objectively deficient under the first prong of <u>Strickland</u>.[4]

Because the KCOA adjudicated the merits[5] of Upchurch's claim under the correct

legal standard, this case turns on whether the KCOA's ultimate disposition was an

unreasonable application of <u>Strickland</u>.  <u>See</u> <u>Aycox</u>, 196 F.3d at 1178; <u>see also</u>

<u>Eze v. Senkowski</u>, 321 F.3d 110, 125 (2d Cir. 2003) ("[W]hen a state court fails

to articulate the rationale underlying its rejection of a petitioner's claim, and

---

[4] Although the KCOA did not cite to <u>Strickland</u>, it utilized the Kansas standard for ineffective-assistance-of-counsel claims, laid out in <u>Baker v. State</u>, 755 P.2d 493 (Kan. 1988).  <u>Baker</u> mirrors the <u>Strickland</u> standard.  <u>See</u> 755 P.2d at 498.  Neither party contends that the KCOA's decision was "contrary to" <u>Strickland</u> under § 2254(d)(1).  <u>See also</u> <u>Early v. Packer</u>, 123 S. Ct. 362, 365 (2003) (explaining that failure to cite to Supreme Court law does not automatically result in a decision that is "contrary to" established federal law under AEDPA).

[5] It is unclear from the KCOA's decision denying Upchurch post-conviction relief on his ineffectiveness claim whether the court determined (1) that Upchurch's counsel was not deficient for failing to challenge Upchurch's conviction under Kansas law, or (2) that Upchurch's counsel on direct appeal was not deficient because counsel <u>did</u> assert that Upchurch's actions did not constitute aggravated kidnapping under Kansas law insofar as counsel broadly challenged the sufficiency of the evidence.  Notwithstanding the cryptic nature of the KCOA's decision, however, it is well-settled in this circuit that it amounts to a decision "on the merits" for AEDPA purposes.  <u>See</u> <u>Aycox v. Lytle</u>, 196 F.3d 1174, 1177 (10th Cir. 1999) (holding that there is an adjudication "on the merits" in the absence of evidence that the state court did not consider and reach the merits of petitioner's claims).  "We owe deference to the state court's <u>result</u>, even if its reasoning is not expressly stated."  <u>Id.</u>; <u>see also</u> <u>Neill</u>, 278 F.3d at 1058 n.6 (noting that "this court still defers to the state appellate court's decision denying relief, even though that court did not expressly state its reasoning on each specific claim").  Thus, it is the KCOA's result—denying Upchurch's claim on the basis that he did not establish deficient performance by his appellate counsel—to which we owe deference.

when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." (quotation omitted)).

**III**

We proceed to inquire whether the KCOA's application of Strickland was objectively unreasonable under § 2254(d)(1). Upchurch's contention is that, although his appellate counsel challenged the sufficiency of the evidence to support Upchurch's conviction for aggravated kidnapping based on inconsistencies in witness testimony, counsel was deficient for not arguing that there was insufficient evidence for the jury to convict Upchurch because Upchurch's actions in transporting Green outside to retrieve her wallet did not satisfy the elements of kidnapping under Kansas law. In order to evaluate Upchurch's counsel's performance under Strickland, "we look to the merits of the omitted issue." Cargle, 317 F.3d at 1202.

In evaluating the sufficiency of the evidence in a criminal case, the Kansas courts determine "whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." State v. Jamison, 7 P.3d 1204, 1211 (Kan. 2000). Kansas defines kidnapping as follows:

Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:
(a) For ransom, or as a shield or hostage;
(b) to facilitate flight or the commission of any crime;
(c) to inflict bodily injury or to terrorize the victim or another; or
(d) to interfere with the performance of any governmental or political function.

K.S.A. § 21-3420. Aggravated kidnapping requires proof that "bodily harm is inflicted upon the person kidnapped." § 21-3421. At trial, the state argued that Upchurch committed the aggravated kidnapping of Green under § 21-3420(b), because he moved her outside to facilitate the commission of the crime of robbery.

In State v. Buggs, 547 P.2d 720, 730 (Kan. 1976), the Kansas Supreme Court held that the Kansas kidnapping statute "requir[es] no particular distance of removal, nor any particular time or place of confinement." Describing subsection (b), the court held that "a taking is a kidnapping if its purpose is to 'facilitate' the commission of any crime, even if the crime facilitated be a less serious crime such as robbery or rape." Id. To facilitate the commission of a crime "means something more than just to make more convenient" and "must have some significant bearing on making the commission of the crime 'easier' as, for example, by lessening the risk of detection." Id. "Whether a taking substantially 'facilitates' another crime or whether it is 'merely incidental' are two different things." Id. at 731. Buggs set forth a three-part test to determine whether a

-10-

taking or confinement is done to facilitate the commission of a crime:

> [I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
> (a) Must not be slight, inconsequential and merely incidental to the other crime;
> (b) Must not be of the kind inherent in the nature of the other crime; and
> (c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

Id.

In Buggs, the defendant accosted two Dairy Queen employees in the parking lot after they had closed the store, directed the victims to unlock the door, and forced them inside, where he raped one of the victims and robbed the store. The court concluded that the defendant's actions constituted kidnapping because the movement of the victims into the store substantially reduced the risk of detection of both the robbery and the rape. Id.; see also State v. Alires, 792 P.2d 1019, 1022 (Kan. 1990) (concluding that the defendant committed kidnapping when he forced the victim of a convenience-store robbery out of the store to conceal the fact that a robbery was in progress); State v. Turbeville, 686 P.2d 138, 145 (Kan. 1984) (finding a kidnapping where the defendant moved victims from the front display area of the store to an office in the rear of the store before committing attempted murder).

By contrast, in State v. Fisher, 891 P.2d 1065, 1073 (Kan. 1995), the

-11-

Kansas Supreme Court concluded that the defendant's actions did <u>not</u> constitute kidnapping. Fisher, while robbing a restaurant, moved two victims to the back office to obtain a key to the safe. Reversing the defendant's conviction for kidnapping, the court concluded that the movement of the victims "neither made the crime substantially easier . . . nor did it substantially lessen the risk of detection." <u>Id.</u> Because the defendant moved the victims out of mere convenience—i.e., the victims knew where the key to the safe was located, and the movement did not lessen the risk of detection—the court concluded that the defendant's actions were "no different from the forced direction of a store clerk to cross the store to open a cash register," which the <u>Buggs</u> court explicitly described as not kidnapping. <u>Id.</u> (quotation omitted). Similarly, in <u>State v. Kemp</u>, 46 P.3d 31, 34 (Kan. Ct. App. 2002), the Kansas Court of Appeals held that a kidnapping did not occur where the defendant moved a robbery victim down a hallway to a central location, where other victims were confined. "Moving all victims to a central location before commencing the gathering of their property appears to be a matter of convenience rather than an act which makes the robbery substantially easier to effect or which lessens the risk of detection." <u>Id.</u>

The state argues that Upchurch's actions constituted kidnapping because, as in <u>Buggs</u>, moving Green outside was not inherent in the crime of robbery and

-12-

made it substantially easier for Upchurch to commit the robbery.[6]  In response, Upchurch asserts that, like the defendants in Fisher and Kemp, his actions merely made the robbery more convenient and, unlike the actions of the defendant in Buggs, his actions increased, rather than decreased, the risk of detection of the robbery.  Upchurch argues that his actions resemble the forced direction of a store clerk to open a cash register, and thus he did not commit aggravated kidnapping. He asserts that there was no purpose in moving Green outside that is distinct from committing the underlying robbery, and thus the taking or confinement of Green did not "facilitate" the robbery under the Kansas statute and applicable case law. Failure of his counsel on direct appeal to make this argument, contends Upchurch, was objectively deficient.

In our analysis, whether Upchurch's actions constituted kidnapping under Kansas law is unclear, and claiming on direct appeal that there was insufficient

---

[6]  The state also emphasizes the fact that, when the district court reviewed Upchurch's co-defendant Loggins's § 2254 motion, the court concluded in a footnote that "a reasonable fact-finder could have found beyond a reasonable doubt that [Loggins] was guilty of aggravated kidnapping.  Green was taken by force from her home to her vehicle to locate her wallet so that robbers could deprive her of her property." (Appellant's Br. at 18 (quoting Loggins v. Hannigan, No. 99-3102-DES, slip op. at 11–12 n.2 (D. Kan. Sept. 11, 2001))). The statement indicates that the district court contradicted itself by granting Upchurch habeas relief on this ground, argues the state.  We conclude that this statement by the district court was dicta, because Loggins did not make a claim of ineffective assistance of appellate counsel in his petition for habeas relief. Accordingly, we do not rely on this statement.

evidence for a rational jury to convict Upchurch would not have been plainly meritorious. As discussed above, Kansas case law exemplifies the difficulty in differentiating between a taking or confining that "facilitates" the commission of another crime versus conduct that is merely incidental to the commission of another crime. While an argument that Upchurch's actions did not constitute kidnapping under Kansas law may have merit, we are not persuaded that it is compelling to a degree that a rational jury could not have found Upchurch guilty beyond a reasonable doubt. In this situation, we must view this omitted issue in relation to the rest of the appeal and give deference to any professional judgment involved in its omission. Cargle, 317 F.3d at 1202.

Consistent with Upchurch's alibi defense at trial, counsel on direct appeal included the argument that inconsistencies in witness testimony resulted in insufficient evidence of Upchurch's guilt. Rather than simply asking the KCOA to reweigh the credibility of witness testimony, counsel could have argued both that Upchurch was not present at the crime scene and that, even if the jury believed the evidence presented by the state, a rational jury could not have found that Upchurch's actions constituted kidnapping under Kansas law. However, we are not persuaded that the omitted argument is obviously stronger than the issue counsel did raise so as to render counsel's performance "objectively unreasonable" under Strickland. Cognizant of the Supreme Court's mandate that

-14-

"[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort be made to eliminate the distorting effects of hindsight," Strickland, 466 U.S. at 689, we are left with substantial reservations that preclude a conclusion that Upchurch's appellate counsel was constitutionally ineffective.

Even were we to conclude that Upchurch's counsel provided objectively deficient assistance, we cannot say that the KCOA's decision to the contrary was unreasonable.[7]  As the Supreme Court has iterated time and again, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams, 529 U.S. at 409.  Constrained by AEDPA's

---

[7] Although the district court did not explicitly state that the KCOA's decision was unreasonable, the court did cite the correct AEDPA standard at the beginning of its order and thus implicitly decided that the state court's application of Strickland was unreasonable.  Indeed, in subsequently denying the state's motion to file a motion for reconsideration out of time, the court described its earlier decision in the following way:

> In granting petitioner habeas relief, the court found that the Kansas Court of Appeals ("KCOA") unreasonably applied the test found in Strickland v. Washington . . . as it applies to ineffective assistance of appellate counsel. Specifically, the court found that petitioner's appellate counsel's failure to properly challenge petitioner's convictions for aggravated kidnaping was an omission of a 'dead-bang winner,' resulting in ineffective assistance of appellate counsel.  The KCOA's failure to recognize this was found to be an unreasonable application of Strickland.

Upchurch v. Bruce, No. 01-3196-DES, slip op. at 2 (D. Kan. Aug. 7, 2002). Therefore, we conclude that the district court applied the correct AEDPA analysis.

deferential standard of review, we hold that it was not unreasonable for the KCOA to conclude that Upchurch received effective assistance of appellate counsel.  Given the Kansas kidnapping statute and relevant case law, it is not entirely clear whether Upchurch's actions facilitated the robbery, or merely made it more convenient; Upchurch's argument that a rational jury could not have concluded that he committed the offense of kidnapping is far from compelling.  Because the KCOA's decision was not an unreasonable application of Strickland, Upchurch is not entitled to habeas relief.

## III

For the foregoing reasons, we **REVERSE** the judgment of the district court granting Upchurch habeas relief.