FILED
United States Court of Appeals
Tenth Circuit

June 16, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROBERT CHAMP, a/k/a Jason King,

Petitioner-Appellant,

v.

ARISTEDES ZAVARAS, Executive
Director of the Colorado Dept. of
Corrections; ATTORNEY GENERAL
OF THE STATE OF COLORADO,

Respondents-Appellees.

No. 10-1308
(D.C. No. 1:08-CV-00859-CMA)
(D. Colo.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **MURPHY**, **GORSUCH**, and **HOLMES**, Circuit Judges.

---

Robert Champ (also known as Jason King), a Colorado state prisoner

proceeding pro se,[1] seeks a certificate of appealability ("COA") to challenge the

---

[*]      This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

After examining the appellate record, this three-judge panel determined unanimously that oral argument would not be of material assistance in the determination of this appeal.  *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[1]      Because Mr. Champ is proceeding pro se, we construe his filings liberally.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Van*
(continued...)

district court's denial of his application for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we deny Mr. Champ's application for a COA and dismiss his appeal.

## BACKGROUND

In 2001, Mr. Champ was convicted of first-degree sexual assault, attempted first-degree murder, and three habitual-criminal counts. The following facts, taken from a decision of the state appellate court in these proceedings, provide a succinct review of the background:

> Following a party in December 1992, the victim, P.T., left with a man she did not know who had offered to give her a ride home. However, P.T. went with the man to an apartment in the adjacent building, where he sexually assaulted her at knifepoint. The man then took P.T. outside to the alley, stabbed her in the neck, and left her for dead. After P.T. made her way to a nearby house, police were called. Officer Christian arrived at the scene and saw P.T. bleeding from the wound on her neck. Officer Christian stayed with P.T. for approximately two hours and accompanied her in an ambulance to the hospital. P.T. told Officer Christian that the man with whom she had left the party had sexually assaulted her and stabbed her in the throat.
>
> Later that morning, P.T. identified defendant in a six-person photographic lineup.
>
> After recovering from her injuries, P.T. returned to her native Belgium in 1993, but died there in 1999 of unrelated causes. Defendant was tried and convicted as charged in 2001.

*People v. King*, 121 P.3d 234, 236–37 (Colo. App. 2005).

---

[1](...continued)
*Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

2

Mr. Champ was sentenced to two concurrent life terms, without the possibility of parole until after forty years. The Colorado Court of Appeals affirmed his convictions and sentence on direct appeal, and the Colorado Supreme Court denied his petition for certiorari.

Mr. Champ thereafter filed a state petition for post-conviction relief pursuant to Colorado Rule of Criminal Procedure 35(c), which the state district court denied without holding a hearing. On appeal, the Colorado Court of Appeals affirmed. Mr. Champ did not seek certiorari from the Colorado Supreme Court.

In 2008, Mr. Champ filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of Colorado, which the district court denied without holding a hearing. The district court also denied Mr. Champ's request for a COA.

Mr. Champ now seeks a COA from this court on the following five claims: (1) whether his Fourteenth Amendment due-process rights were violated by the trial court's denial of trial counsel's request for a continuance to conduct further investigation (and then subsequently present evidence) of the victim's character; (2) whether his due-process rights were violated by the State's failure to preserve certain evidence, including the victim's clothing, the victim's panties, and the weapon used to injure the victim; (3) whether his due-process rights and Sixth Amendment right under the Confrontation Clause were violated when the trial

3

court admitted a law enforcement officer's testimony regarding incriminating statements that the victim made following the attack; (4) whether his due-process rights were violated by the admission of the victim's out-of-court, photo-array identification because the six-person photo array was impermissibly suggestive and the identification was otherwise unreliable due to the victim's mental state; and (5) whether the federal district court abused its discretion in denying his request to expand the record under Habeas Rule 7 (or to hold an evidentiary hearing on many of his claims).

**DISCUSSION**

**I.      Standard of Review**

A COA is a jurisdictional prerequisite to this court's review of a habeas application.  28 U.S.C. § 2253(c)(1)(A); *accord Clark v. Oklahoma*, 468 F.3d 711, 713 (10th Cir. 2006) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).  We will issue a COA only if the applicant "makes a 'substantial showing of the denial of a constitutional right.'"  *Clark*, 468 F.3d at 713 (quoting 28 U.S.C. § 2253(c)(2)).  Under this standard, "the applicant must show 'that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'"  *United States v. Taylor*, 454 F.3d 1075, 1078 (10th Cir. 2006) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Put differently, "the applicant must show that the district court's

4

resolution of the constitutional claim was either 'debatable or wrong.'" *Id.*

(quoting *Slack*, 529 U.S. at 484). Our "inquiry does not require full consideration

of the factual or legal bases adduced in support of the claims," but rather "an

overview of the claims in the habeas [application] and a general assessment of

their merits." *Miller-El*, 537 U.S. at 336.

To the extent that the Colorado Court of Appeals decided Mr. Champ's

claims on the merits, the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA") applies, and we must incorporate the Act's "deferential treatment of

state court decisions . . . into our consideration of [Mr. Champ's] request for [a]

COA." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). Under AEDPA,

Mr. Champ is entitled to federal habeas relief only if he can show that the state

court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d); *accord Phillips v. Workman*, 604 F.3d 1202, 1209 (10th Cir.

2010).

When making our determination, "[w]e presume the factual findings of the

state court are correct unless the petitioner rebuts that presumption by 'clear and

convincing evidence.'" *Welch v. Workman*, 639 F.3d 980, 991 (10th Cir. 2011)

5

(quoting 28 U.S.C. § 2254(e)(1)).

## II.    Denial of Request for Continuance

Under his first claim, Mr. Champ argues that he was deprived of due process when the trial court denied his request for a continuance filed approximately three weeks before trial.  More specifically, he argues that his due-process rights were violated when the trial court refused to continue the trial to permit his attorney to further investigate evidence regarding, *inter alia*, the victim's character and credibility, such as her "reputation for abusing drugs and alcohol[]," her "mental and emotional instability," and her "history of false reporting of sexual abuse."  Aplt.'s Combined Opening Br. & Appl. for a COA at 14 [hereinafter COA Appl.].[2]

---

[2]    Before the state appellate court and the federal district court, Mr. Champ presented this claim as two distinct claims: (1) whether "he was denied due process because the trial court precluded the defense from presenting evidence of the victim's character" (e.g., drug and alcohol abuse and false reporting of sexual abuse), R. at 524 (Order on Appl. for Writ of Habeas Corpus, filed June 21, 2010); and (2) whether "he was deprived of due process when the trial court denied defense counsel's request for a continuance so that counsel could further investigate materially relevant evidence and witnesses," *id.* at 524–25 (internal quotation marks omitted).

However, the only context in which the state trial court was presented with any request regarding evidence about the victim's character was the motion to continue, which it denied; it was never presented with evidence regarding the victim's character, and therefore never ruled on whether any such evidence was admissible.  Recognizing this, both the state appellate court and the district court concluded that Mr. Champ's claims both arose out of the trial court's denial of a continuance to, among other things, further investigate the victim's character and credibility.  *See id.* at 525 ("[T]he pertinent state court orders reflect that the trial

(continued...)

6

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process . . . ." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). Only when a district court's denial is "arbitrary"—e.g., "a myopic insistence upon expeditiousness in the face of a justifiable request for delay"—will it be seen as a denial of due process. *Id.*; *see also Morris v. Slappy*, 461 U.S. 1, 11–12 (1983). Although "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process," *Ungar*, 376 U.S. at 589, this court has stated that "when a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion, but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process," *Case v. Mondragon*, 887 F.2d 1388, 1396 (10th Cir. 1989) (quoting *Hicks v. Wainwright*, 633 F.2d 1146, 1148 (5th Cir. 1981)) (internal quotation marks omitted).

The state appellate court held that the denial was not an abuse of discretion,

²(...continued)
court never ruled on the admissibility of the character evidence described above. Instead, Petitioner's claim arises out of the trial court's denial of defense counsel's request for a continuance of trial to further investigate the victim's character."); *id.* at 161 (Order, dated Dec. 13, 2007) (stating that these two claims were "based on the same grounds," i.e., the denial of a continuance). Accordingly, Mr. Champ was never denied the opportunity to present evidence regarding the victim's character, and it was therefore not error for the courts to consider Mr. Champ's arguments under a single claim—*viz.*, whether Mr. Champ was entitled to relief based on the state trial court's denial of his request for a continuance.

and therefore not a deprivation of Mr. Champ's due-process rights, based on the trial court's findings that counsel "had ample time to investigate the case, that there was no showing that additional time would result in the discovery of relevant witnesses or information, and that there was no showing that the information defendant sought to investigate was relevant or admissible under the rape shield statute."  R. at 161.  On federal habeas review, the district court held that Mr. Champ was not entitled to relief under § 2254(d)(1) or (d)(2). Reasonable jurists could not disagree with this result.  Mr. Champ has not even attempted to undermine the state court's findings—e.g., that there was ample time to investigate—and he has cited no Supreme Court case that would entitle him to relief.  Mr. Champ's conclusory assertions that his due-process rights were violated, absent more, do not demonstrate that he is entitled to habeas relief. Accordingly, we deny Mr. Champ a COA on this claim.

## III.    Failure to Preserve or Recover Evidence

Under his second claim, Mr. Champ argues that

> he was denied due process because State law enforcement officers and the prosecution: (a) failed to preserve the victim's clothing for testing to show that they were cut by hospital personnel, and not him;[3] (b) failed to preserve the victim's

---

3       Many items of the victim's clothing *were* introduced at trial, including her bra, jacket, "tight leggings," and shorts, which demonstrates that the State recovered and preserved these items.  State Trial Tr., Vol. 8, at 22–26. Therefore, any claim regarding the items of clothing introduced at trial is completely without merit.  Thus, Mr. Champ's claim that the government "failed

(continued...)

8

panties, which potentially would have yielded DNA evidence from other men; and ([c]) failed to recover and test the weapon that caused the victim's neck injury.

COA Appl. at 18.

The state appellate court—identifying a standard very similar to that articulated in *California v. Trombetta*, 467 U.S. 479 (1984)[4]—held that Mr.

---

[3](...continued)
to preserve the victim's clothing for testing to show that they were cut by hospital personnel, and not him," COA Appl. at 18, can only be read to apply to any *additional* clothing, if any, that the victim was wearing.

[4]     Under *Trombetta*, the government violates a defendant's right to due process when: (1) it destroys evidence that possesses "exculpatory value that was apparent before the evidence was destroyed"; and (2) the defendant "would be unable to obtain comparable evidence by other reasonably available means." 467 U.S. at 489. In *Arizona v. Youngblood*, the Supreme Court extended *Trombetta* to provide that, if the exculpatory value of the evidence is indeterminate and all that can be confirmed is that the evidence was "potentially useful" for the defense, then the defendant must show that the government acted in bad faith in destroying or failing to preserve the evidence. 488 U.S. 51, 58 (1988).

The state appellate court applied the standard articulated by the Colorado Supreme Court in *People v. Enriquez*, which mirrors *Trombetta*:

> [I]n order to establish a due process violation for failure to preserve potentially exculpatory evidence, the defendant must establish that: (1) the evidence was suppressed or destroyed by the prosecution; (2) the evidence possessed an exculpatory value that was apparent before it was destroyed; and (3) the defendant was unable to obtain comparable evidence by other reasonably available means.

763 P.2d 1033, 1036 (Colo. 1988).

"[W]hen a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard, we

(continued...)

9

[4](...continued)
presume an adjudication on the merits and apply AEDPA deference." *Thornburg v. Mullin*, 422 F.3d 1113, 1124 (10th Cir. 2005); *see also Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005) ("[I]f the [state appellate court] rejected [the applicant's] claim under a standard that is equally or more favorable to him relative to the federal standard, the state court's decision constitutes an adjudication of the federal claim despite citing no federal decisions."); *Upchurch v. Bruce*, 333 F.3d 1158, 1164 n.4 (10th Cir. 2003) (concluding that the state court adjudicated the federal claim on the merits because the state standard for a claim of ineffective assistance of counsel "mirrors" the federal standard). In this case, the state appellate court undoubtedly applied a standard mirroring *Trombetta*. Therefore, insofar as Mr. Champ's failure-to-preserve-evidence claim implicates the *Trombetta* standard, we apply AEDPA deference to the state appellate court's adjudication.

It is arguable, however, that Mr. Champ's allegations also go beyond *Trombetta* and implicate the *Youngblood* standard. *See, e.g.*, COA Appl. at 18 (arguing that the State "failed to preserve the victim's panties, which *potentially* would have yielded DNA evidence from other men" (emphasis added)). The state standard that the Colorado Court of Appeals applied seemingly does not encompass the *Youngblood* standard (i.e., a finding of "bad faith" is required if the evidence is only "potentially" exculpatory). Consequently, we ordinarily would be obliged to review de novo the state court's resolution of Mr. Champ's failure-to-preserve-evidence claim *to the extent that* it implicates *Youngblood*. *See Malicoat v. Mullin*, 426 F.3d 1241, 1246 (10th Cir. 2005) ("[W]ith regard to Mr. Malicoat's claims regarding ineffective assistance of appellate and trial counsel, the OCCA applied state law standards that differ from the federal standard. We therefore engage in de novo review of those claims."); *see also Byrd v. Workman*, __ F.3d __, 2011 WL 2084204, at *5 (10th Cir. May 27, 2011) ("Our standard of review changes if there has been no state-court adjudication on the merits of the petitioner's claim. In such situations, § 2254(d)'s deferential standards of review do not apply." (quoting *Selsor v. Workman*, __ F.3d __, 2011 WL 1632101, at *6 (10th Cir. May 2, 2011)) (internal quotation marks omitted)); *Wilson v. Workman*, 577 F.3d 1284, 1290 (10th Cir. 2009) (en banc) ("If there has been no adjudication on the merits, we review the claim de novo.").

However, this general principle does not avail Mr. Champ for two reasons. First, Mr. Champ does not argue for application of a de novo standard on the grounds that the state court failed to apply the correct legal standard (i.e., a

(continued...)

10

Champ's due-process rights were not violated by a failure to recover or preserve the allegedly exculpatory evidence (i.e., the weapon, additional clothing not introduced at trial, and panties). The state appellate court agreed with the trial court that there was no evidence "that would show that a knife or additional clothing was recovered from the scene," and thus "the state cannot be held under an obligation to preserve evidence that it does not and did not ever possess." R. at 163.

On habeas review, the district court concluded that Mr. Champ was not entitled to relief because the state court's conclusion that Mr. Champ's claim failed because he had not demonstrated that the government ever possessed the evidence—and, consequently, that it had an opportunity to destroy or fail to preserve the evidence—was not an unreasonable determination of the facts based on the evidence presented to the court. In particular, the district court noted that Mr. Champ "did not provide the state courts with any information to substantiate his claim." *Id.* at 530. Moreover, it determined that the state court's decision was not an unreasonable application of governing Supreme Court precedent.

---

[4](...continued)
standard mirroring *Youngblood*) to a portion of his claim. Therefore, we are free to deem any such contention to be waived, and to apply AEDPA deference to the entirety of his claim. *See Byrd*, 2011 WL 2084204, at *5 n.8 (rejecting petitioner's argument for application of a de novo standard of review as waived because he raised it for the first time in his reply brief). Second, for the reasons discussed *infra*, Mr. Champ could not prevail even if we were to apply the more rigorous de novo standard of review to the state court's resolution of the portion of his claim that arguably implicates the *Youngblood* standard.

11

Reasonable jurists could not disagree with this outcome.

Mr. Champ has not pointed to any evidence that was before the state court which demonstrates that the State ever possessed the weapon, any additional clothing, or the victim's panties, thereby giving it the opportunity to subsequently destroy or fail to preserve these items. Nor has he pointed to any case law demonstrating that the government can be held to violate due process by failing to preserve evidence that it never possessed or necessarily had access to. Therefore, he is not entitled to a COA on this issue. That is, reasonable jurists could not disagree with the district court's conclusion that the state appellate court's resolution of this claim was not an unreasonable determination of the facts based on the evidence presented, and was likewise not an unreasonable application of clearly established federal law, because it cannot be said that the State had an obligation to preserve evidence that it was never shown to possess.[5]

---

[5] Even assuming, *arguendo*, that the district court did not adjudicate on the merits the portion of Mr. Champ's failure-to-preserve-evidence claim that arguably implicates *Youngblood*, *see supra* note 4, we would still conclude under a de novo standard that Mr. Champ cannot prevail for at least two reasons. First, akin to the reasoning articulated above, if it cannot be said that the State has a duty to preserve *clearly exculpatory* evidence that it never possessed, *see Bullock v. Carver*, 297 F.3d 1036, 1056 (10th Cir. 2002) ("The Due Process Clause requires police departments to preserve clearly exculpatory evidence *in their possession* that might not be available to a defendant through other means." (emphasis added)), *a fortiori* the State cannot be said to have a duty to preserve evidence that is only *potentially exculpatory* within the meaning of *Youngblood*, where there is no showing that the State ever possessed the evidence. Mr. Champ has not even attempted to demonstrate that the State possessed the weapon, additional clothing, and panties. Accordingly, he cannot demonstrate an

(continued...)

12

## IV.    Incriminating Statements Made to Law Enforcement

In his third claim, Mr. Champ asserts that his Fourteenth Amendment due-process rights and Sixth Amendment right under the Confrontation Clause were violated when the trial court admitted a police officer's testimony regarding incriminating statements the victim made following her attack.  The trial court admitted statements the victim made at the hospital two or three hours after she was attacked, including her description of the attacker and her recounting of the rape and subsequent stabbing.  *See* State Trial Tr., Vol. 8, at 17–22 (recording testimony about victim's statements that "she had been raped," her "description of her assailant," and her recounting of the events of the sexual assault and subsequent stabbing).  Although the victim died before Mr. Champ's trial, and Mr. Champ had no other opportunity to cross-examine her regarding the statements made to the officer at the hospital, the trial court admitted the statements under the "excited utterance" exception to the hearsay rule.

### A.    *Due Process Claim*

Mr. Champ first argues that the victim's statements to the officer were not admissible under the Colorado Rules of Evidence because they do not qualify as "excited utterances," and, therefore, their admission violated his right to due

---

[5](...continued)
entitlement to relief under *Youngblood*.  Second, and perhaps more fundamentally, as the district court noted, to the extent that Mr. Champ relies on *Youngblood*, "his claim fails because he does not point to any facts suggesting bad faith on the part of law enforcement authorities."  R. at 530.

process. The state appellate court denied relief on this claim, holding that the district court did not abuse its discretion in admitting the statements under Colorado Rule of Evidence 803(2). The district court concluded that Mr. Champ was not deprived of due process because regardless of whether the evidence was inadmissible, the admission of the evidence was not "so grossly prejudicial that it fatally infected the trial and deprived him of due process." R. at 532. Accordingly, the district court held that he was not entitled to relief under § 2254(d). Reasonable jurists could not disagree with this result.

"We may not provide habeas corpus relief on the basis of state court evidentiary rulings 'unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results.'" *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (quoting *Mayes v. Gibson*, 210 F.3d 1284, 1293 (10th Cir. 2000)). "Our 'inquiry into fundamental unfairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner.'" *Harris*, 411 F.3d at 1197 (quoting *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002)). Viewing the statements in the context of all of the evidence presented at trial, and specifically considering the strength of the evidence offered against Mr. Champ, it cannot be said that the admission of the incriminating statements rendered Mr. Champ's trial fundamentally unfair. As summarized by the district court, the State presented at least the following evidence:

> [T]he victim immediately identified Petitioner as "the person

14

who raped [her]" from a police photo array a few hours after the attack; Officer Christian collected the victim's torn and bloody clothes within two hours after the attack; a semen sample matching the Petitioner's DNA profile was found on the victim's pantyhose; samples taken from blood found on a vehicle and in the snow in the alley down the block from the building where the sexual assault occurred matched the victim's DNA; and, several witnesses observed the stab wound in the victim's neck and testified that it was bleeding profusely.

R. at 533 (second alteration in original) (citing State Trial Tr., Vol. 7, at 80–86; State Trial Tr., Vol. 8, at 14–15, 22, 24–27, 48–50, 75, 95–99, 102–03, 143–60).

Mr. Champ has not attempted to rebut any of this evidence, and has likewise not pointed to any Supreme Court case that would entitle him to relief under this claim. Because the district court's decision is not debatable—that is, because reasonable jurists could not disagree with the district court's conclusion that Mr. Champ was not entitled to relief under § 2254(d)—Mr. Champ is not entitled to a COA on his due-process claim.

### B. Confrontation Clause

Mr. Champ next asserts that the admission of the victim's statements violated his Sixth Amendment right under the Confrontation Clause because the statements "w[ere] testimonial in nature." COA Appl. at 21. Although not cited by Mr. Champ in his COA application, this claim is apparently brought under *Crawford v. Washington*, in which the Supreme Court held that out-of-court "testimonial" statements made by a witness who is unavailable to testify at trial are inadmissible unless the defendant had a prior opportunity to cross-examine the

15

witness.  541 U.S. 36, 53–54 (2004).

Addressing "whether [the victim's] statements to Officer Christian were testimonial interrogation so as to render them inadmissible under *Crawford*," the state appellate court held that, under the circumstances, her statements were "nontestimonial" and therefore their introduction "did not violate [Mr. Champ's] right of confrontation." *King*, 121 P.3d at 239–41.[6]  The appellate court identified *Crawford* as the governing Supreme Court precedent, and noted that the *Crawford*

---

[6]    *Crawford* was decided while Mr. Champ's case was pending on direct appeal; therefore, the appellate court correctly identified it as the controlling Supreme Court precedent.  However, it is important to note that the state appellate court resolved this issue *prior to* the Supreme Court's decision in *Davis v. Washington*, in which the Court elaborated on the definition of "testimonial."  *See* 547 U.S. 813 (2006).  Specifically, the *Davis* Court held that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency," *id.* at 822 (emphasis added), and are "testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution," *id.* (emphasis added).

It is well-settled that state-court decisions under AEDPA are measured against the Supreme Court's precedents that existed at "the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (internal quotation marks omitted); *see also Stevens v. Ortiz*, 465 F.3d 1229, 1235–38 (10th Cir. 2006) (noting that the court is instructed to identify and apply the clearly established Supreme Court precedent existing at the time the defendant's conviction became final).  Therefore, we do not consider *Davis*—much less the Supreme Court's more recent decision in *Michigan v. Bryant*, 131 S. Ct. 1143 (2011), where the Court further explored the meaning of "testimonial"—in determining whether the state appellate court's decision was contrary to, or involved an unreasonable application of, federal law.

16

Court had "declined to specify what constitutes a 'testimonial' statement." *Id.* at

239 (citing *Crawford*, 541 U.S. at 51–52). Applying *Crawford*, the appellate

court concluded that the victim's statements in this case were not

"testimonial"—and therefore not barred under *Crawford*—based on the following

reasoning:

> Officer Christian arrived upon the scene to find the victim bleeding from her neck. She applied pressure to the wound, and it was necessary for her to ride in the ambulance with the victim to continue to apply pressure to stop the bleeding. Although Officer Christian remained at the hospital with the victim for about two hours, [the victim] was still distressed by the assault and was in a substantial amount of pain from her injuries. [The victim's] statements were not made in a formal setting such as a police station. Nor were the statements elicited by Officer Christian in a deliberate manner to obtain incriminating evidence against defendant.

> Although the statements made by the declarants in many of the [cases cited by the state appellate court] were made closer in time to the occurrence of the incident or crime, . . . unlike the injuries in those situations, [the victim's] injuries were possibly life threatening. Therefore, it took an extended period of time for the doctors to stabilize [her], which resulted in an extended period of pain and distress. The seriousness of [her] injuries supports the nontestimonial nature of the statement because under such pain and distress, it is highly unlikely that [the victim] or any reasonable person would make any statement with the expectation that it would subsequently be used prosecutorially.

> We also agree . . . that classification of a statement as an excited utterance, while not dispositive, supports a conclusion that a statement is nontestimonial. An excited utterance by definition is one made before the declarant has had an opportunity to reflect on the event. Therefore, it is consistent with the definition of an excited utterance to conclude that it is

17

> not a statement which a declarant would reasonably believe at the
> time it was made might later be used at trial.
>
> . . . .
>
> Accordingly, we hold that where, as here, a victim makes
> an excited utterance to a police officer, in a noncustodial setting
> and without indicia of formality, the statement is nontestimonial
> interrogation under *Crawford*. We recognize that there may
> nevertheless be unanticipated circumstances, similar in nature,
> that would warrant a different conclusion.

*Id.* at 240.

The federal district court—noting that "the Supreme Court in *Crawford* did not provide an exhaustive classification of all conceivable statements in response to police questioning as testimonial or non[-]testimonial," R. at 537—held that Mr. Champ had not demonstrated that the state appellate court's resolution of the claim was contrary to or an unreasonable application of *Crawford*, *id*. at 537–38. Reasonable jurists could not disagree with this outcome.

As noted by the state appellate court and the federal district court, the Supreme Court in *Crawford* declined to "spell out a comprehensive definition of 'testimonial,'" but instead only established that "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68; *see also id.* at 51–52 (listing "[v]arious formulations" of "testimonial" statements, including "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to

18

cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," and "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions" (ellipsis in original) (quoting *White v. Illinois*, 502 U.S. 346, 365 (1992) (Thomas, J., concurring)) (internal quotation marks omitted)).

Mr. Champ argues that the victim's statements in this case were undoubtedly "testimonial" because she "had more-than-adequate time to reflect upon the consequences of her actions and behaviors in this matter," and because they were made during the course of a "structured interrogation designed to elicit (draw out) specific responses to fit law enforcement's theory of what occurred, rather than what *actually* occurred." COA Appl. at 20–21. However, in support of his arguments that he is entitled to a COA on this issue, Mr. Champ does not cite to a single Supreme Court case on the Confrontation Clause—not even *Crawford*. Therefore, he has failed to establish that the state appellate court's resolution of this claim was contrary to, or an unreasonable application of, Supreme Court precedent—namely, *Crawford*.

Furthermore, even putting aside Mr. Champ's complete failure to reference any controlling Supreme Court precedent, he still is not entitled to a COA. The Supreme Court in *Crawford* did not expressly indicate that statements like those in the instant case should be deemed "testimonial," and such a conclusion could not reasonably be inferred from the facts of that case. Specifically, the facts of

19

*Crawford* are materially distinguishable from the facts of this case—for example, in *Crawford*, the statements were made in response to an official interrogation held at the police station while the witness was in police custody and under no stress, *see* 541 U.S. at 65, whereas the statements in this case were made in response to questioning that occurred at a hospital while the victim was still under the extreme stress of the attack. Therefore, it cannot be said that the state appellate court's decision was "contrary to" *Crawford*. *See, e.g.*, *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) ("Under the 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.'" (alteration omitted) (quoting *Williams*, 529 U.S. at 413)).

The state appellate court's decision also was not an "unreasonable application" of *Crawford*. "Under the 'unreasonable application' clause, relief is provided only 'if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case,'" *id.* (alteration omitted) (quoting *Williams*, 529 U.S. at 413), or "either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply," *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008). Relief is not warranted under this clause "simply because we conclude in our 'independent

20

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gipson*, 376 F.3d at 1196 (quoting *Williams*, 529 U.S. at 411); *see also House*, 527 F.3d at 1019 ("[A]n unreasonable application constitutes *more than* an incorrect application of federal law." (emphasis added)). In this case, the state appellate court identified the correct legal standard—*viz.*, *Crawford*. Furthermore, based on the circumstances surrounding the questioning and resulting responses—for example, the fact that the interaction took place at the hospital while the victim was under a tremendous amount of pain and stress, rather than during a custodial or otherwise-formal interrogation[7]—the state appellate court concluded that the victim's statements were not "testimonial" as that term was defined in *Crawford*. This was not an "objectively unreasonable" application of *Crawford*. Reasonable jurists could not disagree with the district court's conclusion to this effect; thus, Mr. Champ is not entitled to a COA on this issue.[8]

---

[7] Mr. Champ has neither rebutted, nor attempted to rebut, these facts by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (stating that factual findings of a state court are "presumed to be correct," and that the applicant "ha[s] the burden of rebutting the presumption of correctness by clear and convincing evidence").

[8] The district court also concluded that Mr. Champ was not entitled to relief under § 2254(d)(2) because the state appellate court's resolution of this claim was not "unreasonable in light of the evidence presented." R. at 538. To the extent that Mr. Champ argues that he is entitled to relief under

(continued...)

## V.   Out-of-Court, Photo-Array Identification

Under his fourth claim, Mr. Champ argues that the victim's out-of-court identification of him violated his due-process rights because it was (1) "impermissibly suggestive[] due to the manner in which [the photo] array was presented," and (2) "unreliable . . . due to the victim's confused mental state" (e.g., she was allegedly intoxicated and also sedated due to her injuries).  COA Appl. at 23–24.  A police officer showed the victim a six-person photo array while she was still being treated for her injury at the hospital following the attack.  The victim identified Mr. Champ's photograph as depicting her attacker.  Mr. Champ argues that the use of this evidence violated his due-process rights.

The state appellate court rejected this claim because (1) "there was nothing unduly suggestive about the officer's showing of the [six-person] photo array to the victim," (2) the victim "had a sufficient opportunity to observe her assailant to make an accurate identification," (3) "neither officer thought she was under the influence of alcohol or detected any odor of alcohol," and (4) "any evidence of mental health problems or the degree to which she was upset went to the weight of the evidence rather than its admissibility."  R. at 165–66 (internal quotation marks omitted).  Accordingly, the appellate court concluded that Mr. Champ's

---

[8](...continued)
§ 2254(d)(2)—and it does not appear that he has attempted to do so before this court—the district court is correct.  Based on the evidence presented at trial, the district court's resolution of this claim cannot be said to be "unreasonable."

allegations "were insufficient to support a finding of a due process violation." *Id.* at 166.

On federal habeas review, the district court held that Mr. Champ was not entitled to relief under § 2254(d)—specifically, that the state appellate court's conclusion that the identification did not violate due process was not contrary to or an unreasonable application of Supreme Court precedent, nor an unreasonable determination of the facts in light of the evidence presented.

In his COA application, Mr. Champ does not argue that he is entitled to relief under § 2254(d)(1) or (d)(2), let alone reference the language found in those provisions. Furthermore, he cites to no Supreme Court case that would entitle him to relief under this claim. And, aside from arguing that the state court's resolution was based on "incomplete information," COA Appl. at 24, he makes no argument that the state court's determination of the facts based on the evidence presented to it was unreasonable. Accordingly, Mr. Champ has not demonstrated that reasonable jurists could debate the correctness of the district court's resolution of this claim, and thus he is not entitled to a COA on this issue.

Even if we were to disregard the deficiencies in Mr. Champ's COA application, he is still not entitled to relief under this claim. We have summarized the controlling principles found in Supreme Court precedent:

> When the constitutionality of a photo array is challenged, the due process clause requires a two-pronged inquiry: first, the court must determine whether the photo array was impermissibly

23

> suggestive, and if it is found to be so, then the court must decide whether the identifications were nevertheless reliable in view of the totality of the circumstances.

*United States v. Sanchez*, 24 F.3d 1259, 1261–62 (10th Cir. 1994) (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968), and *Johnston v. Makowski*, 823 F.2d 387, 391 (10th Cir. 1987)); *see Manson v. Brathwaite*, 432 U.S. 98, 106–07 (1977) ("The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability."); *see also Watkins v. Sowders*, 449 U.S. 341, 347 (1981) (noting that "[i]t is the reliability of identification evidence that primarily determines its admissibility").[9]

Mr. Champ does not dispute our understanding of the controlling principles. *See* COA Appl. at 24 (discussing *Sanchez*). "These two prongs must be analyzed separately, and it is only necessary to reach the second prong if the

---

[9] Although the state appellate court cited state law when reviewing this claim, the claim was undoubtedly "adjudicated on the merits" because the standard applied by the state court was "at least as favorable to the applicant as the federal standard." *Thornburg*, 422 F.3d at 1124. *Compare* R. at 164–65 ("A pretrial identification procedure violates a defendant's due process rights if it is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. . . . If the defendant is able to [show that it was impermissibly suggestive], the burden shifts to the prosecution to show that, despite the improper suggestiveness, the identification was reliable under the totality of the circumstances."), *with Sanchez*, 24 F.3d at 1261–62 ("When the constitutionality of a photo array is challenged, the due process clause requires a two-pronged inquiry: first, the court must determine whether the photo array was impermissibly suggestive, and if it is found to be so, then the court must decide whether the identifications were nevertheless reliable in view of the totality of the circumstances.").

24

court first determines that the array was impermissibly suggestive." *Sanchez*, 24 F.3d at 1262. Apart from his wholly conclusory statement that "the photo array presented by law enforcement officials to the victim in this matter at the hospital was impermissibly suggestive," COA Appl. at 24, Mr. Champ provides no argument and points to no evidence that could serve to rebut the state court's finding that "there was nothing unduly suggestive about the photos or procedure used by the detective." R. at 165. Accordingly, Mr. Champ has not shown that the photo array was unconstitutional—i.e., that it was in any way impermissibly suggestive. Furthermore, an independent review of the record suggests that it was not. Therefore, reasonable jurists could not disagree with the district court's conclusion that Mr. Champ was not entitled to relief under this claim.

## VI. Denial of Request to Expand the Record

In his last claim, Mr. Champ argues that the district court "erred and abused its discretion when it summarily denied his pro se Motion to Expand the Record Pursuant to Habeas Rule 7." COA Appl. at 26.[10] Although he does not specifically present it as one of the five issues raised on appeal, Mr. Champ also argues throughout his application that the district court erred in failing to conduct

---

[10]     Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts states, in part, that "[i]f the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition," including "letters predating the filing of the petition, documents, exhibits, . . . answers under oath to written interrogatories propounded by the judge, [and] [a]ffidavits."

an evidentiary hearing "to fully develop [the] evidence" and to make up for the lack of evidence before the state courts. *Id.* at 15; *see id.* at 12, 17. In the past, "[a] district court's decision to grant or deny an evidentiary hearing in a habeas proceeding [wa]s reviewed for an abuse of discretion." *Anderson v. Attorney General*, 425 F.3d 853, 858 (10th Cir. 2005). The same was true with regard to a district court's refusal to supplement the record under Habeas Rule 7. *See, e.g.*, *Landrum v. Mitchell*, 625 F.3d 905, 923 (6th Cir. 2010); *Eckstein v. Kingston*, 460 F.3d 844, 852 (7th Cir. 2006).

However, under the Supreme Court's recent decision in *Cullen v. Pinholster*, habeas "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." 131 S. Ct. 1388, 1398 (2011). The *Cullen* Court reasoned that the "backward-looking language" found in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made"; therefore, the record under review must be "limited to the record in existence at that same time—*i.e.*, the record before the state court." *Id.* Although *Cullen* dealt with new evidence that the district court admitted in the context of an evidentiary hearing, this newly articulated rule applies with equal force to any expansion of the record under Habeas Rule 7. That is, *Cullen* stands for the proposition that the district court can only examine "the record in existence at [the] time [the state-court decision was made]—*i.e.*, the record before the state court." *Id.*

Mr. Champ's requests to expand the record and to hold an evidentiary hearing to further develop the record aim to place new evidence before the federal court that was not a part of the state-court record.  Under *Cullen*, this is no longer permitted.[11]  Accordingly, Mr. Champ is not entitled to an expansion of the record or an evidentiary hearing.  *See Atkins v. Clarke*, __ F.3d __, 2011 WL 1419127, at *1 (1st Cir. 2011) ("The Supreme Court's new decision in *Cullen v. Pinholster* requires that we reject this appeal from a denial of a request for an evidentiary hearing in relation to a petition for habeas corpus." (citation omitted)).

## CONCLUSION

For the reasons set forth above, we **DENY** Mr. Champ's request for a COA and **DISMISS** his appeal.


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge

---

[11]     Even if *Cullen* did not control—in either whole or part—our resolution of this issue, we would conclude that the district court did not abuse its discretion in denying Mr. Champ's requests to place additional evidence before it. The district court correctly concluded that either Mr. Champ's supplementation requests were "too vague to provide a basis for the requested relief," R. at 551, or the evidence at issue would not have altered the outcome, *see Landrum*, 625 F.3d at 925 (noting that the affidavit petitioner was denied permission to add to the record "would not have made a difference"); *Eckstein*, 460 F.3d at 852 (noting that the "alleged error" that petitioner sought to bring to the court's attention through supplementation of the record "had no chance of affecting the outcome").