(46 P.3d 31)

No. 86,279

STATE OF KANSAS, *Appellee*, v. EUGENE A. KEMP, *Appellant*.

Opinion filed May 10, 2002.

*Randall L. Hodgkinson,* deputy appellate defender, and *Steven R. Zinn,* deputy appellate defender, for appellant.

*Ian H. Taylor,* assistant district attorney, *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before GERNON, P.J., GREEN and JOHNSON, JJ.

JOHNSON, J.: Following a jury trial, Eugene A. Kemp was convicted of four counts of aggravated kidnapping, two counts of kidnapping, one count of attempted aggravated robbery, and one count of aggravated burglary. Kemp was sentenced to a controlling term of 1240 months' imprisonment. Kemp appeals his convictions, challenging the sufficiency of the evidence to support the elements of kidnapping and aggravated kidnapping and the adequacy of the foundation for the admission of his videotaped statement. Kemp also challenges the inclusion of juvenile adjudications in his crim-

inal history for sentencing purposes. We affirm in part and reverse in part.

Highly summarized, the facts were as follows. Two masked gunmen entered Candace Sue Lasiter's home to steal drugs and money. Liberty Pierce was asleep in the living room, three men (Richard, Thomas, and Michael) were in a bedroom playing video games and smoking marijuana, and Candace and her son Jessie were out running errands. The gunmen awakened Liberty and led her at gunpoint to the bedroom where the three men were located. Apparently, the gunmen heard Candace and Jessie returning. One gunman stayed with the four people in the bedroom; the other gunman went to the front door, met Candace and Jessie, demanded money at gunpoint, and shoved them down the hallway to another bedroom. At some point, the first gunman was overtaken by the three men and the second gunman came to the first bedroom, forced the door open, and began firing into the room. The three men and Liberty were all shot and suffered varying degrees of injury. The gunmen fled. Kemp was identified by one of the victims, who knew him previously. DNA testing linked Kemp to a bandanna recovered near the house. Kemp ultimately confessed to the police in a videotaped interview.

## SUFFICIENCY OF THE EVIDENCE

Kemp first argues that the evidence supporting the kidnapping charges was not sufficiently distinct from the evidence supporting the aggravated robbery and aggravated burglary charges. Specifically, Kemp argues the three men were never moved to a different location and that their confinement was a necessary component of the robbery. Kemp acknowledges that Liberty, Candace, and her son were moved down a hallway, but he asserts the movement was for the robbers' convenience, not to facilitate the robbery.

When the sufficiency of evidence is challenged on appeal, the standard of review is whether, after a review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Hays*, 256

Kan. 48, 61, 883 P.2d 1093 (1994). The State must prove all of the elements of the crime charged.

"Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:

"(a) For ransom, or as a shield or hostage;

"(b) to facilitate flight or the commission of any crime;

"(c) to inflict bodily injury or to terrorize the victim or another; or

"(d) to interfere with the performance of any governmental or political function." K.S.A. 21-3420.

Aggravated kidnapping involves the additional element that bodily harm must be inflicted on the victim. K.S.A. 21-3421. Kemp was prosecuted under K.S.A. 21-3420 (b), *i.e.*, he allegedly took or confined the victims with the intent to facilitate the commission of aggravated robbery.

In *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976), the Supreme Court set forth the criteria to assess whether the accused's taking or confining of the victim was sufficiently separate and distinct from the accused's actions in committing the underlying crime to constitute the additional crime of kidnapping:

"[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

"(a) Must not be slight, inconsequential and merely incidental to the other crime;

"(b) Must not be of the kind inherent in the nature of the other crime; and

"(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." 219 Kan. at 216.

It is clear that the three men (Richard, Thomas, and Michael) were not kidnapped. They were not moved from the bedroom in which they were initially discovered. Their confinement was merely incidental to the attempt to rob them of drugs and money at gunpoint. It is difficult to perceive of an aggravated robbery involving any less confinement than was effected here; the confinement was inherent in the crime allegedly facilitated. The situation presented in the bedroom was a "standstill robbery," as described in *Buggs*. 219 Kan. at 215-16; see also *Hays*, 256 Kan. at 63 (reversing kidnapping conviction on similar facts).

Liberty, on the other hand, was taken from the living room and moved down a hallway before being confined with the others in the bedroom. However, movement alone does not support a kidnapping charge. See, *e.g.*, *State v. Fisher*, 257 Kan. 65, 78, 891 P.2d 1065 (1995) (holding movement of store clerk to obtain key to safe did not constitute kidnapping). *Buggs* requires that the movement have some significance beyond that required for the underlying offense. 219 Kan. 203, Syl. ¶ 10. Moving all victims to a central location before commencing the gathering of their property appears to be a matter of convenience rather than an act which makes the robbery substantially easier to effect or which lessens the risk of detection. One would not expect an aggravated robbery of convenience store patrons to take place aisle by aisle; all victims would normally be shepherded together.

The State responds that the three men and Liberty were confined in the bedroom to prevent Candace and her son from detecting the robbery. Liberty did testify that one of the gunmen noticed the lights of Candace's car before moving her to the bedroom with the three men. However, when Candace and Jessie opened the front door and encountered a masked man pointing a gun at them and demanding money, it is reasonable to believe they detected that a robbery was in progress. The fact that Kemp remained with the other four victims was probably necessary to prevent their escape prior to completion of the robbery, but it did not substantially lessen the risk that Candace and Jessie would discover a robbery was in progress. Most Kansas cases addressing kidnapping charges based on the lessening the risk of detection prong of *Buggs* contain far more compelling facts. In several cases, the victims were bound. See *State v. Hammond*, 251 Kan. 501, 505, 837 P.2d 816 (1992); *State v. Lewis*, 27 Kan. App. 2d 380, 388, 5 P.3d 531 (2000); *State v. Little*, 26 Kan. App. 2d 713, 719, 994 P.2d 645 (1999). In other cases, the victims were moved to a separate, more remote location. See *State v. Richmond*, 258 Kan. 449, 453, 904 P.2d 974 (1995); *State v. Alires*, 246 Kan. 635, 638, 792 P.2d 1019 (1990). The facts of this case more closely resemble those presented in *Hays*, where the court determined that the victim's con-

finement during the course of a robbery did not support an additional charge of kidnapping. 256 Kan. at 62-63.

The simple kidnapping charges were related to Candace and Jessie; bodily harm was not inflicted on either of them. Kemp's accomplice did force them down a hallway, but there is no indication that the movement was for any purpose other than to rob them. Candace testified she was pushed into another bedroom. However, the struggle that erupted when Richard, Thomas, and Michael attacked Kemp interrupted the accomplice and Candace testified that she was alone in that bedroom. As the accomplice went to Kemp's aid, Jessie exited the house through a window. Even viewed in the light most favorable to the prosecution, the evidence does not show that Candace and Jessie were confined or that their movement was not slight, inconsequential, and merely incidental to the aggravated robbery. The movement had no significance independent of the robbery.

Certainly, the victims, especially Ballenger, were seriously harmed. However, we are not assessing whether great bodily harm was inflicted, as we would with an aggravated battery charge. Further, the harm emanated from an attempted aggravated robbery, not a kidnapping. The convictions for aggravated kidnapping and kidnapping are reversed.

Because we find that none of the kidnapping charges were supported by the evidence, we need not address Kemp's arguments regarding the reduction of aggravated kidnapping to simple kidnapping or the giving of a lesser included offense instruction.

## FOUNDATION FOR VIDEOTAPED STATEMENT

Kemp argues the district court erred in admitting his videotaped confession. The admission of evidence lies within the sound discretion of the trial court. An appellate court's standard of review regarding a trial court's admission of evidence, subject to exclusionary rules, is abuse of discretion. *State v. Lumley*, 266 Kan. 939, 950, 976 P.2d 486 (1999).

At trial, the State proffered Kemp's videotaped confession, and defense counsel lodged a timely objection to the foundation laid

by the State. The trial judge overruled Kemp's objection, and the tape was played for the jury.

Apparently, our courts have not specifically addressed the foundational requirements for admitting a videotape into evidence. Kemp argues that the standard used for admitting photographic evidence should be applied to videotapes. The State, on the other hand, contends that the standard used for admitting audiotapes should be applied.

Photographs are generally admissible after proper foundation and identification if they accurately represent an object that is material and relevant to an issue in the case. *State v. Jefferson*, 204 Kan. 50, 54, 460 P.2d 610 (1969). Proper foundation exists when the witness demonstrates he possesses the requisite skill and experience to conduct the demonstration and displays the accuracy and reliability of the models and photographs. *State v. Kendig*, 233 Kan. 890, 892, 666 P.2d 684 (1983). Kemp's chief complaint is that the State provided no basis to conclude that the videotape accurately represented his interaction with the interrogating officer.

The State responds that the prosecutor did, in fact, lay an adequate foundation for the admission of the videotape. In Kansas, the elements that constitute a proper foundation for the admission of an audiotape have been outlined as follows: (1) a showing that the recording device was capable of taking testimony; (2) a showing that the operator of the device was competent; (3) establishment of the authenticity and correctness of the recording; (4) a showing that changes, additions, or deletions have not been made; (5) a showing of the manner of the preservation of the recording; (6) identification of the speakers; and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement. *State v. Williams*, 235 Kan. 485, 491, 681 P.2d 660 (1984).

It is interesting to note that the State has advocated a more stringent standard than Kemp. More to the point, however, other jurisdictions that have considered the issue have adopted the standard used for admitting photographic evidence. See *State v. Redd*, 144 N.C. App. 248, 251, 549 S.E.2d 875 (2001); *Reynolds v. State*, 539 So. 2d 428, 430 (Ala. App. 1988); *State v. Braud*, 475 So. 2d 29, 32 (La. App. 1985). Indeed, the seven-part test used to verify

and admit sound recordings has been considered by some to be " 'obsolete, even for sound recordings' " and " 'has been abandoned in the better reasoned cases in favor of a rule holding that sound tapes like photographs are admissible when a witness testifies they are reliable representations of the subject sound. [Citations omitted]' " *Reynolds*, 539 So. 2d at 430.

Under either standard, the State failed to lay an adequate foundation for the admission of the videotape. At most, the officer testified that the tape admitted into evidence was a copy of the original tape. The officer was never asked, nor did he testify, whether the tape accurately represented his conversation with Kemp. Because the prosecutor failed to provide a proper foundation, the videotape was improperly admitted.

Our review, however, is a two-step process. If we first find that evidence has been improperly admitted, we must then determine whether to apply the harmless error rule of review or the federal constitutional error rule to the erroneous admission of that evidence. *State v. Leitner*, 272 Kan. 398, Syl. ¶ 6, 34 P.3d 42 (2001). Kemp has not alleged any error of constitutional magnitude, so the general harmless error rule applies. Error in the admission or exclusion of evidence by the court is not grounds for granting a new trial or setting aside a verdict unless the erroneous action appears to the court to be inconsistent with substantial justice. K.S.A. 60-261; *State v. Bornholdt*, 261 Kan. 644, 660, 932 P.2d 964 (1997).

While a videotaped confession is particularly damning evidence, on the facts of this case, the trial judge's erroneous admission of it was harmless. The other evidence presented against Kemp was compelling. Several of the victims identified him, and DNA evidence linked him to one of the bandannas worn during the robbery. While the State should not be relieved of its obligation to lay a proper foundation for the evidence it seeks to admit, its failure here did not yield an unjust result. The erroneous admission of the videotape into evidence did not constitute reversible error.

## JUVENILE ADJUDICATIONS

Finally, Kemp challenges the sentence imposed by the district court. Kemp's presentence investigation report revealed his exten-

sive criminal history, which resulted in a criminal history score of "A." The vast majority of Kemp's prior offenses were committed when he was a juvenile. Without the juvenile adjudications in his criminal history, Kemp would have a criminal history score of "I" and a significantly shorter prison term.

On appeal, Kemp argues that the use of juvenile adjudications to enhance his sentence violated his constitutional right to due process, as the juvenile adjudications were never proven to a jury beyond a reasonable doubt. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Following the rationale of *Apprendi*, our courts have determined that "the Kansas statutory scheme for imposing upward departure sentences, embodied in K.S.A. 2000 Supp. 21-4716, is unconstitutional on its face" because it did not require the aggravating factors used to enhance a defendant's sentence to be found by a jury beyond a reasonable doubt. See *State v. Gould*, 271 Kan. 394, Syl. ¶ ¶ 2, 3, and 4, 23 P.2d 801 (2001). However, prior convictions need not be submitted to the jury nor proved beyond a reasonable doubt. *Almendarez-Torres v. United States*, 523 U.S. 224, 239-47, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998).

Our Supreme Court has confirmed that the *Apprendi* prior conviction exception encompasses juvenile adjudications. *State v. Hitt*, 273 Kan. 224, Syl. ¶ ¶ 1 and 2, 42 P.3d 732 (2002). Kemp's juvenile adjudications were properly included in his criminal history determination.

Affirmed in part, reversed in part, and remanded for resentencing.