NOT DESIGNATED FOR PUBLICATION

No. 115,613

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES ANTHONY BROWN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; RENE S. YOUNG, judge. Opinion filed November 3, 2017.
Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., PIERRON and GREEN, JJ.

PER CURIAM:  James Anthony Brown was convicted by a jury of one count of aggravated kidnapping; one count of aggravated robbery; and one count of aggravated battery. Brown appeals, arguing (1) that his conviction for aggravated kidnapping was not supported by sufficient evidence to show that he had taken or confined his victim, Carla Jo Mahon; (2) that the trial court committed clear error in failing to instruct on the lesser included offenses of the offenses with which he was charged; (3) that the trial court committed clear error in its instructions and statements to the jury by effectively denying the jury its power to nullify a guilty verdict; and (4) that the trial court violated his rights

under the Sixth and Fourteenth Amendments to the United States Constitution as detailed in *Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). For reasons set forth below, we reject these arguments. Accordingly, we affirm.

In 2014, James A. Brown was living in Salina, Kansas. Brown was unemployed because of a back injury, so he took up odd jobs at local businesses. In December 2014, Brown met Carla Jo Mahon. Mahon owned a coffee roasting business in Salina. Brown asked Mahon if she had any jobs for him. Mahon gave Brown some business fliers and told him that if he passed them out she would pay him $5. Brown returned the following day and asked for more work. He told Mahon that he needed $25 to buy his daughter a Christmas gift. Mahon told Brown that if he wanted to he could wash 300 coffee glasses that she had recently purchased. Mahon asked Brown to come back the next week to wash the glasses.

Brown returned to Mahon's business the following week. He was supposed to show up at 1 p.m., but he did not arrive until around 4 p.m. Brown did not look good. His eyes were red and his shoulders were drooped down. Mahon asked Brown if he was feeling okay. Brown told Mahon that he was okay, but he had recently been in the hospital. Mahon told Brown that he could return the next day to wash the glasses.

The next day, December 11, 2014, Brown arrived on time at 1 p.m. Brown began washing the glasses. Mahon admired the quality and diligence of Brown's work. But after about 20 minutes of washing the glasses, Brown told Mahon that he needed to leave to talk to somebody in Dickinson County. Mahon paid Brown the $25 she promised him for washing the glasses, even though he had only washed the glasses for about 20 minutes.

Brown returned only 15 or 20 minutes after he had left. Brown told Mahon that he needed $15 more, but Mahon told him that she was "tapped out." Nonetheless, Brown continued to wash glasses. While Brown was working, a customer was in the store. The

2

customer purchased a $13.50 bag of coffee beans with a $100 bill. Mahon commented on the crispness of the large bill. She put the bill in the pocket of her jeans. Brown abruptly quit washing the glasses. He seemed agitated to Mahon. He began to sweep the shop.

Brown stopped washing glasses and went into the bathroom to clean. Brown came out and told Mahon that there was no toilet paper in the bathroom. Mahon retrieved a roll of toilet paper from a nearby shelf and handed it to Brown. Brown then asked Mahon where the cleaning solution was that she preferred to clean the bathroom with. Mahon retrieved the cleaning solution from a nearby shelf and handed it to Brown.

A moment later, Brown began to sweep the store again. He asked Mahon where the dustpan was located, but Mahon told him that she did not know. Brown suggested that maybe it was in the bathroom. Mahon went and looked for the dustpan in the bathroom. She saw that it was on the wall. Mahon grabbed it. When she turned around, Brown was blocking the bathroom doorway. Brown lunged at Mahon and grabbed her by the throat. Mahon was shocked. Mahon was pushed up against the bathroom wall. She pushed back with all her strength, but she was not able to get out of the bathroom. Mahon was screaming. Brown took his hands off of Mahon's throat. It was dark in the bathroom, but Mahon thought she could see something in Brown's hand. He was holding a knife. She asked him, "What are you doing? Why are you doing this?" Brown grabbed Mahon's throat again and replied, "The money. Where's the money?"

Mahon told Brown that the money was in the cash register. She told Brown to take the money and run. Brown went to the register but struggled to get it open. Mahon exited the bathroom and tried to explain to Brown how to open the register. Brown eventually opened the register. When he opened the register, Mahon ran out of the shop. She yelled for help. An employee from the store next door heard her yell. Mahon went into the store and the employee called 911.

Mahon told the 911 dispatcher that Brown was wearing black jeans and a dark hoodie sweatshirt with a green, quilted coat. She told the dispatcher that she thought Brown was between 45 and 50 years old. When the responding officer arrived, he noticed that Mahon had a puncture wound on the left side of her neck. The wound was bleeding. Mahon had at least two other puncture wounds from the knife that Brown was holding in the bathroom. On December 15, 2014, Brown was found hiding in a closet in Angela Peacock's home. Brown was placed under arrest.

On December 17, 2014, Brown was charged with one count of aggravated kidnapping under K.S.A. 2014 Supp. 21-5408(b); one count of aggravated robbery under K.S.A. 2014 Supp. 21-5420(b); and one count of aggravated battery under K.S.A. 2014 Supp. 21-5413(b)(1)(B).

At his jury trial, Brown denied taking any money from Mahon's coffee roasting shop. He testified that after he finished washing the glasses that day, he did not return to the store. He testified that the day he washed the glasses for Mahon was the only time he was ever in the area.

On October 1, 2015, Brown was found guilty of aggravated kidnapping, aggravated robbery, and aggravated battery. Brown was sentenced to a total controlling prison term of 324 months with 36 months of postrelease supervision. Brown filed a timely notice of appeal.

*Did Sufficient Evidence Exist to Conclude that Brown Had Taken or Confined Mahon?*

"'When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). "'In making a

4

sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility. [Citations omitted.]'" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). A guilty verdict will only be reversed in rare cases where the testimony is so incredible that no reasonable fact-finder could find the defendant guilty beyond a reasonable doubt. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

Brown was charged with aggravated kidnapping under K.S.A. 2014 Supp. 21-5408(b). That statute defines kidnapping as "the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person . . . (2) to facilitate flight or the commission of any crime." K.S.A. 2014 Supp. 21-5408(a)(2). Under a previous version of the kidnapping statute, our Supreme Court held that "a taking or confining is a kidnapping if its purpose is to 'facilitate' the commission of any crime, even if the crime facilitated be a less serious crime such as robbery or rape." *State v. Buggs*, 219 Kan. 203, Syl. ¶ 8, 547 P.2d 720 (1976). "The word 'facilitate' . . . means something more than just to make more convenient. A taking or confining, in order to be said to 'facilitate' a crime, must have some significant bearing on making the commission of the crime 'easier.'" 219 Kan. 203, Syl. ¶ 9.

The *Buggs* court went on to clarify what it meant by "facilitate:"

"If a taking or confining is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
"(a) Must not be slight, inconsequential and merely incidental to the other crime;
"(b) Must not be of a kind inherent in the nature of the other crime; and
"(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." 219 Kan. 203, Syl. ¶ 10.

5

In *Buggs*, two employees of a Wichita Dairy Queen had closed their store and were leaving for the night. Before leaving, one employee put the day's receipts into a bank bag and put the bag inside her purse. As the two employees were leaving, they were approached in the parking lot by two men. The two men told the employees that they had a gun. They forced the employees back into the store. When they got into the store, the two men asked the employees where the money was. The employee who put the money in her purse handed it to the men. The two men forced the employees to lie down on the floor. One of the men then raped the female employee. 219 Kan. at 205.

On appeal, the two men argued "that the movement and confinement of both victims were only 'minor and inconsequential,' and were 'merely incidental' to the real crimes of robbery and rape." 219 Kan. at 209. Thus, the two men argued that their conduct did not amount to a "kidnapping." 219 Kan. at 209. Our Supreme Court rejected their argument, holding instead that the Kansas kidnapping statute in place when the crime was committed did not require any particular distance of movement or any particular time or place of confinement. 219 Kan. at 214. The court further held:

> "[T]o 'facilitate' in our minds means something more than just to make more convenient. We think that a taking or confining, in order to be said to 'facilitate' a crime, must have some significant bearing on making the commission of the crime 'easier' as, for example, by lessening the risk of detection." 219 Kan. at 215.

The court provided the following examples to illustrate its point:

> "A standstill robbery on the street is not a kidnapping; the forced removal of the victim to a dark alley for robbery is. The removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist is not a kidnapping; the removal from a public place to a place of seclusion is. The forced direction of a store clerk to cross the store to open a cash register is not a kidnapping; locking him in a cooler to facilitate escape is." 219 Kan. at 216.

Thus, the court held that because the two men had seized the employees in the parking lot and forced them back into the shop to commit the crimes, their conduct did amount to a kidnapping. 219 Kan. at 216-17.

Brown echoes the argument from *Buggs*. He argues that "[b]ecause the taking or confinement of Ms. Mahon was merely incidental to the aggravated robbery and aggravated battery, there was insufficient evidence for a rational factfinder to find Mr. Brown guilty of aggravated kidnapping." Additionally, Brown argues that *State v. Kemp*, 30 Kan. App. 2d 657, 46 P.3d 31 (2002), provides this court with a more applicable factual scenario.

In *Kemp*,

"[t]wo masked gunmen entered Candace Sue Lasiter's home to steal drugs and money. Liberty Pierce was asleep in the living room, three men (Richard, Thomas, and Michael) were in a bedroom playing video games and smoking marijuana, and Candace and her son Jessie were out running errands. The gunmen awakened Liberty and led her at gunpoint to the bedroom where the three men were located. Apparently, the gunmen heard Candace and Jessie returning. One gunman stayed with the four people in the bedroom; the other gunman went to the front door, met Candace and Jessie, demanded money at gunpoint, and shoved them down the hallway to another bedroom." 30 Kan. App. 2d at 658.

On appeal, this court held that the three men in the bedroom were clearly not kidnapped because they were not moved from the room they were already located in. Thus, the court held that "[t]heir confinement was merely incidental to the attempt to rob them of drugs and money at gunpoint." *Kemp*, 30 Kan. App. 2d at 659. The court further held that "[i]t is difficult to perceive of an aggravated robbery involving any less confinement than was effected here; the confinement was inherent in the crime allegedly facilitated. The situation presented in the bedroom was a 'standstill robbery,' as described

7

in *Buggs*." 30 Kan. App. 2d at 659. The court also held that even though Liberty Pierce was actually moved to the bedroom, that movement alone did not constitute a kidnapping because the movement did not have any significance beyond that required for the underlying offense. 30 Kan. App. 2d at 660. The court specifically held:

> "Moving all victims to a central location before commencing the gathering of their property appears to be a matter of convenience rather than an act which makes the robbery substantially easier to effect or which lessens the risk of detection. One would not expect an aggravated robbery of convenience store patrons to take place aisle by aisle; all victims would normally be shepherded together." 30 Kan. App. 2d at 660.

Brown specifically argues that "although . . . Mahon's testimony does establish that [he] suggested that . . . Mahon come into the bathroom by deceiving her about the existence of the dustpan, there was not evidence that [he] committed the taking *to hold* . . . Mahon in order for [him] to commit or flee from an aggravated robbery."

But contrary to Brown's argument, the evidence here shows that his crime differs from *Kemp* and the examples discussed. Here, the evidence shows that Mahon was moved to the bathroom so that Brown could hold her there to effectuate the robbery. When Mahon went into the bathroom, Brown lunged at her and held her by the throat. He immediately demanded that she tell him where the money was held. Brown blocked the exit and threatened Mahon with a knife. Thus, even though Mahon was never locked in the bathroom, she was "held" for the purpose of the kidnapping statute. See *State v. Richmond*, 258 Kan. 449, 454, 904 P.2d 974 (1995) (Kansas kidnapping statute does not require a victim to be tied or locked in; statute can be satisfied by threatening statements and physical abuse).

Moreover, based on the rule from *Buggs*, the question we focus on is whether Brown's actions facilitated the robbery. Even though Mahon was not moved from outside of the store back into the store, as in *Buggs*, she was moved from a more public space

near the storefront into a small bathroom. Brown's movement of Mahon made it easier for him to confine her and substantially increased his odds of avoiding detection. Thus, Brown did not commit a "standstill robbery" as discussed in *Buggs*. Instead, like the example from *Buggs* of a criminal moving a victim from a well-lit street to a dark alley, Brown moved Mahon into the bathroom to facilitate his crime and lower the risk of detection.

Indeed, Brown lured Mahon to the bathroom to retrieve a dustpan that he maintained he needed to sweep up the store. When she grabbed the dustpan from the bathroom wall, Brown grabbed Mahon's throat and asked her: "Where's the money?"

In conclusion, Brown's movement of Mahon facilitated the aggravated robbery that occurred. Had Brown taken Mahon at knifepoint and walked her to the cash register and forced her to open it, a kidnapping conviction would be inappropriate under *Buggs*. But that did not occur. Instead, Brown opted to trick Mahon into entering the bathroom and then hold her there to facilitate the robbery. The evidence shows that the movement of Mahon into the bathroom and subsequent holding of her there was not incidental and was not the kind of movement inherent in robbery. Additionally, the movement had significance independent of the robbery—it substantially decreased the likelihood of detection. Accordingly, when viewing the evidence in the light most favorable to the State, we hold that sufficient evidence existed to support Brown's conviction for aggravated kidnapping.

*Did the Trial Court Commit Clear Error in Failing to Instruct on the Lesser Included*

*Offenses of (1) Kidnapping; (2) Criminal Restraint; (3) Robbery; and (4) Battery?*

Based upon K.S.A. 2016 Supp. 22-3414(3), an appellant's challenge to a trial court's failure to give a lesser included jury instruction is reviewed under the same analytical framework used in challenges to other jury instructions. See *State v. Dupree*, 304 Kan. 377, 391-92, 394, 373 P.3d 811 (2016). Thus, this court employs the following three-step analysis: (1) First, the court determines whether it has jurisdiction to consider the issue and whether the party has failed to preserve the issue, exercising an unlimited standard of review; (2) next, the court determines the merits of the claim as to whether an error occurred during the trial, exercising an unlimited standard of review to determine whether the challenged instruction was legally and factually appropriate; and (3) if the trial court erred, the court determines whether the error was harmless or requires reversal. *State v. Louis*, 305 Kan. 453, 457-58, 384 P.3d 1 (2016).

The first and third steps are interrelated insofar as whether a party has properly preserved the issue for appeal under the first step will affect the reversibility inquiry under the third step. *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015). This is because K.S.A. 2016 Supp. 22-3414(3) states:

> "No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous."

Accordingly, if a party fails to request an instruction below, this court will review the issue for the first time on appeal but will reverse a conviction only if the defendant can establish clear error. *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012). To establish clear error, "'the defendant must firmly convince the appellate court that the

10

giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016).

Brown argues that the trial court erred in failing to instruct on kidnapping and criminal restraint as lesser included offenses of aggravated kidnapping. He also argues that the trial court erred in failing to instruct on robbery as a lesser included offense of aggravated robbery and battery as a lesser included offense of aggravated battery. Accordingly, we will consider each of those claimed errors through the three-step analysis previously discussed.

*Preservation*

First, we note that Brown acknowledges that he did not request any of the lesser included instructions below that he now complains of on appeal. As was discussed earlier, however, the failure to request an instruction does not mean that this court is precluded from considering the issue. It only serves to increase Brown's burden on appeal. To show that he is entitled to a reversal of his convictions, Brown will be required in the third step of this analysis to show that the trial court's failure to give the lesser included instructions was clearly erroneous. Of course, to get to the reversibility inquiry in the third step, Brown must first show that the proposed lesser included instructions were both legally and factually appropriate.

*The lesser included instructions were legally appropriate but not factually appropriate,*

This step in the analysis is often broken down into two parts. First, we will determine whether the proposed lesser included instructions were legally appropriate. Then, we will determine whether the proposed instructions were factually appropriate.

11

In order for a lesser included instruction to be legally appropriate, the proposed instruction must contain a lesser included offense of the offense that was charged. Under K.S.A. 2016 Supp. 21-5109(b), a lesser included crime is as follows: (1) A lesser degree of the same offense; (2) an offense where all elements of the lesser offense are identical to some elements of the charged offense; (3) an attempt to commit the charged offense; or (4) an attempt to commit an offense under (1) or (2).

Here, Brown argues that the trial court erred in failing to instruct on kidnapping and criminal restraint as lesser included offenses of aggravated kidnapping. He also argues that the trial court erred in failing to instruct on robbery as a lesser included offense of aggravated robbery and battery as a lesser included offense of aggravated battery. The State does not dispute the legal appropriateness of Brown's proposed instructions.

Our Supreme Court has held that both kidnapping and criminal restraint are lesser included offenses of aggravated kidnapping. *State v. Simmons*, 282 Kan. 728, 742, 148 P.3d 525 (2006). Our Supreme Court has also held that "[r]obbery is a lesser included offense of aggravated robbery because all of the elements of the former are included in the latter offense. [Citations omitted.]" *State v. Whitaker*, 255 Kan. 118, 128, 872 P.2d 278 (1994). Finally, our Supreme Court has held that battery is a lesser included offense of aggravated battery. *State v. Davis*, 236 Kan. 538, 542, 694 P.2d 418 (1985). Accordingly, Brown is correct that each of his proposed lesser included instructions would have been legally appropriate.

Next, we consider whether the instructions would have been factually appropriate. K.S.A. 2016 Supp. 22-3414(3) states that "where there is some evidence which would reasonably justify a conviction of some lesser included crime as provided in subsection (b) of K.S.A. 2016 Supp. 21-5109, and amendments thereto, the judge shall instruct the jury as to the crime charged and any such lesser included crime." "If, after a review of all

12

the evidence viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty of the lesser crime, failure to give the instruction is error." *State v. Fisher*, 304 Kan. 242, 258, 373 P.3d 781 (2016). Our Supreme Court has also held that a criminal defendant is entitled to a lesser included instruction supported by the evidence unless the evidence presented at trial excludes a theory of guilt on the lesser included offense. *Simmons*, 282 Kan. at 741. The holding from *Simmons* provides Brown with a significant hurdle in showing his proposed lesser included instructions were factually appropriate.

In *Simmons*, the defendant was charged with aggravated kidnapping and aggravated robbery. On appeal, Simmons argued that the trial court erred in failing to instruct on the lesser included offenses of kidnapping and robbery because, based on the evidence, the jury could have found him guilty of those lesser crimes. 282 Kan. at 742. The court noted that the charges of aggravated robbery and aggravated kidnapping both contained the element that Simmons had inflicted bodily harm upon the victim. But on appeal Simmons did not dispute that the victim had suffered bodily harm. Instead, he merely argued that there was evidence to support the lesser included offenses on which he sought instructions. The court noted, though, that the defendant's theory of defense at trial was that he did not commit the crimes at all. Thus, the court held that

> "given the evidence, the jury had the opportunity either to believe Simmons and acquit or to believe the incriminating evidence and find Simmons guilty of the aggravated crimes. The evidence at trial clearly excluded the lesser included offenses. Lesser included offense instructions were not warranted because the jury could not have reasonably convicted Simmons of the lesser offenses." 282 Kan. at 742-43.

Here, like in *Simmons*, Brown was charged with crimes that all contained some form of the element of "bodily harm." See K.S.A. 2016 Supp. 21-5408(b) (aggravated kidnapping); K.S.A. 2016 Supp. 21-5420(b)(2) (aggravated robbery); K.S.A. 2016 Supp. 21-5413(b)(1)(B) (aggravated battery). And like the defendant in *Simmons*, Brown fails

13

to argue on appeal that no bodily harm occurred. In fact, in arguing that the lesser included instruction for battery was factually appropriate, Brown acknowledges that Mahon suffered bodily harm. Moreover, and most importantly, we note that Brown's theory of defense at trial was that he was not the individual who had committed the crimes against Mahon. Thus, as in *Simmons*, the jury at Brown's trial had the opportunity to believe him and acquit him or to believe the incriminating evidence and find him guilty. Accordingly, the evidence at Brown's trial excluded the lesser included offenses that he now proposes on appeal. The lesser included instructions were not factually appropriate.

Finally, Brown respectfully argues that our Supreme Court has wrongfully decided *Simmons*. Without addressing that argument, we note that we are duty bound to follow the precedent of the Kansas Supreme Court absent an indication that the Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015).

Because we have determined that the lesser included instructions were not factually appropriate, it follows that the trial court did not err in failing to give them. Thus, we do not need to address the third step of our instructions analysis. As a result, Brown's argument fails.

*Did the Trial Court Commit Clear Error in Discouraging the Jury from Exercising its Power to Nullify?*

Next, Brown argues that "[b]ecause the district court's instructions in the present case misstated the law regarding the jury's obligation to enter a guilty verdict, and because there is a real possibility the jury would have reached a different verdict but for the district court's error, this Court must reverse Mr. Brown's convictions."

14

When an appellant challenges a jury instruction, this court follows the same three-step analysis that was discussed earlier: (1) First, the court determines whether it has jurisdiction to consider the issue and whether the party has failed to preserve the issue, exercising an unlimited standard of review; (2) next, the court determines the merits of the claim as to whether an error occurred during the trial, exercising an unlimited standard of review to determine whether the challenged instruction was legally and factually appropriate; and (3) if the trial court erred, the court determines whether the error was harmless or requires reversal. *Louis*, 305 Kan. at 457. Once again, then, we must walk through the analysis to determine whether the trial court's instructions were made in error.

*Preservation*

Brown failed to object to the challenged instructions at trial. Because of this failure, we will review the instructions to determine whether they were clearly erroneous. See K.S.A. 2016 Supp. 22-3414(3). Again, to establish clear error, Brown must firmly convince this court that the giving of the instruction actually affected the verdict. See *Cooper*, 303 Kan. at 771.

*The challenged instructions were legally appropriate.*

Brown is essentially arguing that the trial court's jury instructions impermissibly disallowed the jury from exercising any form of jury nullification. Thus, Brown is actually arguing that the challenged instructions were not legally appropriate. The success of Brown's argument depends on our answer to that question.

Our Supreme Court has held that "[j]uries possess the power to decide a case in a manner which is contrary to the applicable facts and law, *i.e.*, the power of jury

nullification. However, a defendant is not entitled to have the jury instructed on the power of nullification." *State v. Naputi*, 293 Kan. 55, Syl. ¶ 4, 260 P.3d 86 (2011).

But Brown does not argue that he was entitled to an affirmative instruction on jury nullification. Instead, as we noted before, Brown argues that the trial court's instructions negated any opportunity the jury had to nullify a guilty verdict. Brown points to five main instructions in presenting his argument.

First, Brown takes issue with the trial court's following statement made to the jury during its initial instructions before the evidence was presented: "At the end of the case, I will instruct you on the law that you must apply to the evidence in order to reach a verdict." Second, which is closely tied to the previous complaint, Brown takes issue with the following statement also made before the evidence was presented:

"Following the presentation of evidence, you will be formally instructed in the principles of law. These will be read to you so you can consider them during closing arguments. You must follow the instructions of law, and you may not disregard them or substitute any opinion you may have as to what the law is or should be."

Third, Brown takes issue with the following statement made to the jury after the close of evidence: "[T]he Court will instruct you on the law that you must apply in this case." Fourth, Brown takes issue with the following statement to the jury made before the formal instructions were read: "You must decide the case by applying these instructions to the facts as you find them." And finally, Brown takes issue with Instruction No. 10. which states:

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no

16

reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty."

Brown's argument is a familiar one. The argument centers on our Supreme Court's opinion in *State v. Smith-Parker*, 301 Kan. 132, 340 P.3d 485 (2014). To fully understand *Smith-Parker*, however, we must discuss how it came about.

In *State v. Lovelace*, 227 Kan. 348, 607 P.2d 49 (1980), *overruled in part by Smith-Parker*, 301 Kan. 132, our Supreme Court addressed a similar challenge to a jury instruction. In *Lovelace*, the defendant, Lovelace, challenged a jury instruction that read: "'If you have no reasonable doubt as to the truth of any of the claims made by the State, you *must* find the defendant guilty as charged.'" (Emphasis added.) 227 Kan. at 354. The challenged instruction is what is commonly referred to as a reasonable doubt jury instruction. Lovelace argued that the trial court erred in giving the reasonable doubt instruction because it spoke "in terms of a mandatory adjudication of guilt." 227 Kan. at 354. The pattern jury instruction from which the reasonable doubt instruction was derived actually used the word "should" in place of more commanding language, such as "must." The court then analyzed and compared the words "must" and "should." The court held that "the two words can be used interchangeably in criminal instructions. Both convey a sense of duty and obligation." 227 Kan. at 354.

In *Smith-Parker*, however, our Supreme Court reconsidered its holding from *Lovelace*. In *Smith-Parker*, the court was once again asked to review a reasonable doubt jury instruction which read: "'If you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you *will* enter a verdict of guilty.'" 301 Kan. at 163. The court overruled *Lovelace*, finding that "[b]oth the wording of the instruction at issue in *Lovelace*—'must'—and the wording at issue here—'will'—fly too close to the sun of directing a verdict for the State. A judge

17

cannot compel a jury to convict, even if it finds all elements proved beyond a reasonable doubt." 301 Kan. at 164.

Brown argues that "[j]ust as in *Smith-Parker*, in the present case, the reasonable doubt instruction, as well as other instructions that the district court gave to the jury, came too close to the district court compelling the jury to enter a guilty verdict." Brown further argues that *State v. Allen*, 52 Kan. App. 2d 729, 372 P.3d 432 (2016), *rev. denied* 306 Kan. ___ (April 17, 2017), shows that this court has recognized the distinction between "must" and "should."

In *Allen*, this court applied the holding from *Smith-Parker* to a jury instruction that read:

> "'If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you *must* [emphasis added] find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *should* find the defendant guilty.'" 52 Kan. App. 2d at 733.

In *Allen*, the appellant argued that the instruction "eliminated the possibility of jury nullification." 52 Kan. App. 2d at 735. Even so, the court upheld the jury instruction, acknowledging the difference between "must" and "should." The court noted that "'unlike the words must, shall, and will, the word should does not express a mandatory, unyielding duty or obligation; instead, it merely denotes the proper course of action and encourages following the advised path.' [Citation omitted.]" 52 Kan. App. 2d at 735.

Notably, the reasonable doubt jury instruction considered in *Allen* is identical in language to the reasonable doubt jury instruction given here. Thus, relying on the reasoning from *Allen*, we can confidently hold that the reasonable jury instruction given here did not fly too close to the sun of directing a verdict for the State, as is prohibited by

*Smith-Parker*. Even so, Brown advances arguments beyond the reasonable doubt jury instruction.

Brown additionally argues that the informal instruction-like statements made by the trial court to the jury essentially directed a verdict for the State. Those statements are detailed at the beginning of this section. The challenged statements all share one common thread—they all effectively communicate to the jury that it "must follow the law as instructed." But Brown's argument that these informal statements are prohibited by *Smith-Parker* does not pass muster. The previous analyses of "must/will" and "should" have all come in relation to reasonable doubt instructions—think *Lovelace*, *Smith-Parker*, and *Allen*. The challenged instructions from those cases all instructed on the concept of reasonable doubt and the actual verdict. Here, the challenged statements did not operate to command the jury to enter a verdict.

Indeed, the statement that "[y]ou must decide the case by applying these instructions to facts as you find them" gives jurors discretionary authority on how to determine the facts of the case. Because of this discretionary authority, the jurors can find the facts any way they choose. There is nothing in the previously mentioned statement that would prevent the jurors from applying the "facts as they find" to nullify a potential verdict.

Finally, the challenged statements simply instructed the jury that it must follow the *law* as provided in the instructions. Moreover, instructing a jury that it must use the law as provided in the instructions has no bearing on whether that jury can nullify a potential verdict. Indeed, this court has previously held that "the rule that the jury must consider the evidence and law while making its determination applies when the jury finds the defendant guilty, when the jury finds the defendant not guilty, and *when the jury nullifies the verdict*." *State v. Mitchell-Boyles*, No. 114,799, 2017 WL 129949, at *12 (Kan. App. 2017) (unpublished opinion), *rev. denied* 306 Kan. ___ (June 29, 2017).

Moreover, this court has considered and rejected arguments similar to Brown's in three recent decisions. See *State v. Moss*, No. 113,034, 2016 WL 3856824, at *16 (Kan. App. 2016) (unpublished opinion) (District court did not err in instructing the jury that its verdict "'must be founded entirely upon the evidence admitted and the law as given.'"); *State v. Boone*, No. 110,836, 2015 WL 3632046, at *5 (Kan. App. 2015) (unpublished opinion) (Because instruction "merely describes the jury's legal duty to render a verdict according to the law and evidence, the district court did not err . . . ."), *rev. denied* 303 Kan. 1079 (2016); *Mitchell-Boyles*, 2017 WL 129949, at *13 (instruction legally appropriate); accord *State v. Toothman*, No. 114,944, 2017 WL 2494953, at *10-11 (Kan. App. 2017) (unpublished opinion) (same).

Accordingly, the caselaw that Brown relies on does not support his conclusion that the jury instruction and other challenged statements were made to the jury in error. Instead, the reasonable doubt instruction and the other challenged statements were legally appropriate. Because the instructions were legally appropriate, Brown's jury nullification argument fails.

*Did the Trial Court Violate Brown's Sixth and Fourteenth Amendment Rights Under* Apprendi*?*

Brown argues that because the State did not include his prior convictions in his complaint or prove the prior convictions to a jury beyond a reasonable doubt, it violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution as detailed in *Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

Brown acknowledges that the Kansas Supreme Court has previously decided this issue in *State v. Ivory*, 273 Kan. 44, 46-47, 41 P.3d 781 (2002). Brown only includes this

issue in order to preserve it for any federal appeal that may occur. Accordingly, we will not address this issue.

Affirmed.