NOT DESIGNATED FOR PUBLICATION

No. 120,992

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CODY LEWAYNE MONTGOMERY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed
November 6, 2020. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before GARDNER, P.J., BUSER and BRUNS, JJ.

PER CURIAM:  A jury convicted Cody Montgomery of aggravated battery based on
an altercation with his girlfriend in the parking lot of a Quik Trip gas station in Wichita.
Montgomery appeals, arguing that the district court erred by admitting surveillance video
without a proper foundation. He also argues that the aggravated battery statute is
unconstitutionally vague. Finding no error, we affirm.

1

*Factual and Procedural Background*

After an altercation outside a Quik Trip gas station on May 23, 2018, the State charged Montgomery with one count of aggravated battery, alleged to be a domestic violence offense under K.S.A. 2017 Supp. 21-5111(i) and (j). The State alleged that Montgomery attacked his girlfriend as she put gas in her car, by hitting her, biting her, and cutting her above her eye, which required stitches. Bystanders broke up the attack and called police. When officers arrived they interviewed witnesses, found Montgomery, who had fled, and went inside the station to review unmanned security video.

The district court held a three-day jury trial. State called several witnesses, including bystanders, responding officers, and the gas station manager. While questioning Quick Trip's night manager, the State moved to admit the security video into evidence. Montgomery objected based on lack of foundation, arguing that the manager had not created or produced the video, and it had only been shipped to him from Quik Trip's central security hub in Tulsa, so he could not know whether it was a fair and accurate representation of the original video in Tulsa. The district court admitted the video into evidence, finding that the State had laid a sufficient foundation.

The jury found Montgomery guilty of aggravated battery and found that the aggravated battery was an act of domestic violence. The court sentenced Montgomery to 34 months in prison.

Montgomery timely appeals.

*The State Laid a Proper Foundation to Admit the Surveillance Video Into Evidence.*

Montgomery first argues that he should get a new trial which excludes the video because the State failed to lay a sufficient foundation for its admission. Montgomery

2

argues that an adequate foundation cannot be laid without testimony by someone who participated in the events or who took the photographs.

When an appellate court reviews a decision to admit evidence, we first consider whether the evidence is relevant and then we apply the statutory rules that govern the admission or exclusion of evidence. *State v. Jenkins*, 311 Kan. 39, 44, 455 P.3d 779 (2020). Montgomery does not contest that the video is relevant and material. He challenges only whether the State laid an adequate foundation for its admission. We review a district court's decision on an evidentiary foundation for abuse of discretion. That means that we uphold the lower court's decision unless no reasonable person would agree or the decision hinged on a legal or factual error. 311 Kan. at 45.

Videos, like photos, are "writings" under Kansas evidence rules. See K.S.A. 2019 Supp. 60-401(m); *State v. Dale*, 293 Kan. 660, 662-63, 267 P.3d 743 (2011). The burden of establishing a foundation to admit a writing is "minimal"—it requires only that the proponent offer evidence that a reasonable juror could rely on to conclude that the writing is what the proponent represents it to be. *Jenkins*, 311 Kan. at 51. The evidence may be circumstantial or indirect. 311 Kan. at 51. "Photographs are generally admissible after proper foundation and identification if they accurately represent an object that is material and relevant to an issue in the case." *State v. Kemp*, 30 Kan. App. 2d 657, 662, 46 P.3d 31 (2002). The degree of accuracy required varies depending on the purpose of the photograph. *State v. Suing*, 210 Kan. 363, 365, 502 P.2d 718 (1972). The person who lays the foundation for a photograph need not be the person who took the photograph. *State v. Pruitt*, 42 Kan. App. 2d 166, 176, 211 P.3d 166 (2009). No statute or case requires the witness to be the person who downloaded the video from the cameras or burned it onto the DVD. *State v. Miles*, No. 110,511, 2014 WL 7565767, at *7 (Kan. App. 2014) (unpublished opinion). And those testifying do not have to state specifically that the pictures are "fair representations" of what was portrayed. *Suing*, 210 Kan. at 365.

3

Given those legal standards, we review the testimony to see if the State proffered enough evidence for a reasonable juror to rely on to conclude that the video represents what the State claimed it did—the altercation involving Montgomery outside the Quik Trip on May 23, 2018.

One of the officers who responded to the Quik Trip on the night in question—Matthew Fisher—testified to lay foundation for the video. After his partner found Montgomery and took him into custody, Fisher entered the station to see if surveillance video had captured the altercation. He spoke with the night manager on-duty and they called Quik Trip's central security hub in Tulsa, which stores the surveillance videos. Fisher told Quik Trip security which two cameras he needed video from and then viewed clips of that video. He testified that those cameras had good angles of pump five, where the altercation occurred. Because the night manager at the Quik Trip could not download security video, Fisher arranged for other officers to collect the video in the morning. After the morning manager downloaded the video, Fisher received it. He reviewed the video—State's Exhibit 1—before trial and testified at trial that it was a fair and accurate depiction of the video that he had viewed at the Quik Trip.

Rich Paulson was the Quik Trip's on-site night manager the night of the altercation, though he did not see what happened outside the store. He reviewed the video before testifying and confirmed that it was video from the Quik Trip where the altercation had taken place and that the time stamp on the video was for May 23, 2018, the day of the altercation. As the night manager, Paulson could not access, download, or manipulate any Quik Trip security video. Nobody had altered the video given to the police.

This testimony provides sufficient foundation to show that the routine unmanned surveillance recording accurately depicted a certain place (the Quik Trip), on a certain date (May 23, 2018), at a certain time (the hour stated on the time stamp). Paulson's testimony negates any serious inference that the tape had been subjected to tampering.

See *State v. Pham*, 281 Kan. 1227, 1243-45, 136 P.3d 919 (2006) (finding Kwik Shop video foundation sufficient under comparable facts). The video was admitted for the purpose of showing acts taken by Montgomery and his girlfriend, who did not testify at trial. For those purposes, the district court could reasonably find that the testimony provided enough evidence to meet the "minimal" burden to admit relevant and material video. *Jenkins*, 311 Kan. at 51. We see no abuse of discretion.

*Montgomery Fails to Preserve his Claim that the Kansas Aggravated battery Statute is Unconstitutionally Vague.*

Montgomery next argues that the aggravated battery statute he was convicted under is unconstitutionally vague. That statute, K.S.A. 2019 Supp. 21-5413(b)(1)(B) and (C), defines aggravated battery as a battery that "can be inflicted." Montgomery says that phrase gives no direction to a fact-finder about the threshold for the possibility of harm. Montgomery cites both K.S.A. 2019 Supp. 21-5413(b)(1)(B), which criminalizes "knowingly causing bodily harm  to another person     . . . in any manner whereby great bodily harm . . . can be inflicted," and K.S.A. 2019 Supp. 21-5413(b)(1)(C), which criminalizes "knowingly causing physical contact with another person . . . in any manner whereby great bodily harm . . . can be inflicted."

Montgomery concedes that he did not argue to the district court that this statute was unconstitutional. He thus raises this issue for the first time on appeal. As a general rule, we do not review constitutional grounds for reversal raised for the first time on appeal. *State v. Becker*, 311 Kan. 176, 186, 459 P.3d 173 (2020). But several exceptions to this rule may apply, including:  (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the judgment of the district court may be upheld on

appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Patterson*, 311 Kan. 59, 62, 455 P.3d 792 (2020).

To invoke one of these exceptions to the general rule, an appellant must explain why an issue was not raised below and provide a reason why we should consider it for the first time on appeal. Kansas Supreme Court Rule 6.02(a)(5) (2020 Kan. S. Ct. R. 34). Montgomery asserts the first two exceptions noted above.

But even when an appellant cites an exception and makes the required explanation, the appellate court need not entertain the argument: "The decision to review an unpreserved claim under an exception is a prudential one. Even if an exception would support a decision to review a new claim, this court has no obligation to do so." *State v. Gray*, 311 Kan. 164, Syl. ¶ 1, 459 P.3d 165 (2020). We decline to review Montgomery's unpreserved claim under any potentially applicable exception.

Alternatively, even if Montgomery had preserved this issue in the district court, it fails on the merits. Our Supreme Court squarely held in *State v. Williams*, 308 Kan. 1439, 1462, 430 P.3d 448 (2018), that the "can be inflicted" language in the aggravated battery statute does not render the statute unconstitutionally vague:

> "Individuals of ordinary intelligence can understand what is meant by 'can be inflicted.' Thus, the statute gives adequate notice. And the phrase gives sufficient guidance to prevent arbitrary or discriminatory enforcement by prosecutors, courts, and juries. K.S.A. 2011 Supp. 21-5413(b)(1)(B) is not unconstitutionally vague."

We are duty bound to follow Kansas Supreme Court precedent unless we find some indication that the Kansas Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). We find no caselaw departing from *Williams*.

Affirmed.